JORDAN P. BREWSTER, ESQ.
ATTORNEY ID # 002272011
LAW OFFICE OF JORDAN P. BREWSTER
14 Pine Street, Suite 7
Morristown, N.J. 07960
973-500-6254
*Attorney for Plaintiff*


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY


| | |
|---|---|
| JOHN FAKLA,<br><br>                       Plaintiff,<br><br>v.<br><br>THE BOROUGH OF MIDDLESEX;<br>MIDDLESEX BOROUGH POLICE<br>DEPARTMENT; MIDDLESEX BOROUGH<br>POLICE CHIEF MATTHEW GEIST, both<br>individually and in his official capacity,<br>MIDDLESEX BOROUGH POLICE OFFICER<br>MARK MELCHIORRE, both individually and in<br>his official capacity as an officer of the Borough<br>of Middlesex Police Department, MIDDLESEX<br>COUNTY, MIDDLESEX COUNTY<br>PROSECUTOR'S OFFICE; MIDDLESEX<br>COUNTY ASSISTANT PROSECUTOR<br>MARTHA MCKINNEY, both individually and<br>in her official capacity; PROSECUTOR BRIAN<br>GILLET, both individually and in his official<br>capacity; MIDDLESEX COUNTY<br>PROSECUTOR DETECTIVE CHRISTOPHER<br>VANEERDE, both individually and in his<br>official capacity; ANN KLEIN FORENSIC<br>CENTER; JOHN and JANE DOES, 1-10; ABC<br>CORPORATIONS, 1-10; and ABC PUBLIC<br>ENTITIES, 1-10;<br><br>                  Defendants. | **Civil Action No.**<br><br><br>**COMPLAINT**<br>**AND JURY TRIAL DEMAND AS TO ALL**<br>**COUNTS** |

Plaintiff, JOHN FAKLA ("Plaintiff" or "Mr. Fakla"), by way of Complaint against defendants, THE BOROUGH OF MIDDLESEX; MIDDLESEX BOROUGH POLICE DEPARTMENT; MIDDLESEX BOROUGH POLICE CHIEF MATTHEW GEIST, both individually and in his official capacity, MIDDLESEX BOROUGH POLICE OFFICER MARK MELCHIORRE, both individually and in his official capacity as an officer of the Borough of Middlesex Police Department, MIDDLESEX COUNTY PROSECUTOR'S OFFICE; MIDDLESEX COUNTY ASSISTANT PROSECUTOR MARTHA MCKINNEY, both individually and in her official capacity; MIDDLESEX COUNTY PROSECUTOR DETECTIVE CHRISTOPHER VANEERDE, both individually and in his official capacity; ANN KLEIN FORENSIC CENTER; JOHN and JANE DOES, 1-10; ABC CORPORATIONS, 1-10; and ABC PUBLIC ENTITIES, 1-10; ("Defendants"); states as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought pursuant to 42 U.S.C. § 1983 and pendant State claims seeking compensatory and punitive damages and injunctive relief against Defendants for their violations of Plaintiffs civil rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of New Jersey as well as for malicious prosecution resulting from the unlawful acts of Defendants.

## JURISDICTION AND VENUE

2.      This case arises under the United States Constitution and 42 U.S.C. §§ 1983, 1988. This Court has jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over Plaintiff's State claims pursuant to 28 U.S.C. § 1367.

3.      The declaratory and injunctive relief sought by Plaintiff is authorized by 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983 and Rule 57 of the Federal Rules of Civil Procedure.

2

4.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b)(l) and (b)(2) as the bulk of the actions complained of took place in Middlesex County in the State of New Jersey, which is located in this judicial district, the District of New Jersey.

5.      This Court has the authority to award costs and fees under 42 U.S.C. § 1988.

## PARTIES

6.      Plaintiff is a citizen of the United States. He was, at all relevant times, a resident of the Borough of Middlesex and the State of New Jersey.

7.      Defendant BOROUGH OF MIDDLESEX (the "Borough"), is a municipal entity duly incorporated and authorized under the laws of the State of New Jersey. The Borough is authorized to maintain a police department which acts as its law enforcement agent and for which it is ultimately responsible. The Borough assumes the risks incidental to the maintenance of its police force and is charged with enforcement of all state and municipal laws within the Borough and the employment of its police officers.

8.      The Borough was, at all relevant times, responsible for policy making, hiring, supervision, training, control, and retention of the individually named Police Officers. The Borough is a person capable of being sued pursuant to 42 USC §1983, which serves as a vehicle for those bringing a cause of action for violation of their constitutional rights under color of law.

9.      Upon information and belief, Defendant CHIEF MATTHEW GEIST ("Chief Geist"), was, at all relevant times, an agent and employee of the Middlesex Police Department, a municipal agency of Defendant Borough of Middlesex. He is sued in his individual and official capacity.

3

10.     Defendant MARK MELCHIORRE ("Office Melchiorre") was, at all relevant times, an officer, employee, and agent of the Middlesex Police Department, a municipal agency of Defendant Borough of Middlesex. He is sued in his individual and official capacity.

11.     Defendants JOHN DOES POLICE OFFICERS, SERGEANTS, LIEUTENANTS, CHIEFS, CAPTAINS, SUPERVISORS, DIRECTORS, PROSECUTORS, INVESTIGATORS, and TRAINING OFFICERS 1-20 ("Police John Does 1-20), were, at all relevant times, officers, sergeants, lieutenants, chiefs, captains, supervisors, directors, prosecutors, investigators, training officers, principals, partners, employees, representatives, agents or agencies of Defendant Borough of Middlesex and any other individual, entity, agency company, or corporation, whose actual identities are presently unknown, who were acting within the scope of their employment, and whose actions assisted and/or contributed to the unlawful, unconstitutional and tortious conduct that resulted in, or contributed to, the physical assault and malicious prosecution of Mr. Fakla. They are sued in their individual and official capacities.

12.     Defendants Geist, Melchiorre, and Police John Does 1-20, were at all relevant times, on duty with the Borough of Middlesex's Police Department on July 1, 2019.

13.     At all relevant times, Defendants Geist, Melchiorre, and Police John Does 1-20, acted under the color of law with the power and authority vested in them as officers, agents, and employees of Defendant Borough of Middlesex and incident to the pursuit of their duties as officers, employees, and agents of the Borough.

14.     Defendant officers, sergeants, chiefs, captains, supervisors, directors, prosecutors, investigators, agents, and employees named above shall, at times, be referred to below collectively, as indicated by the attendant facts and circumstances, as "Defendant Officers."

15.     Defendant MIDDLESEX COUNTY PROSECUTOR'S OFFICE ("Prosecutor") is a county-level public entity duly incorporated and authorized under the laws of the State of New Jersey. The Prosecutor is authorized to investigate and prosecute major crimes, as well as wage investigations of municipal police departments within the county it operates upon complaint by the citizenry or public officials pursuant to the dictates of N.J.S.A. § 40A:14-181 et seq., for which any derogation of by local law enforcement agencies within a prosecutor's respective county, is ultimately to responsibility of the Prosecutor. The Prosecutor assumes the risks incidental to the maintenance of its staff, personnel, and professionals, and is charged with enforcement of all state laws within the Prosecutor's domain and the employment of its staff, personnel, and professionals.

16.     The Prosecutor was, at all relevant times, responsible for policy making, hiring, supervision, training, control, and retention of the individually named prosecutors and investigators. The Prosecutor is a person capable of being sued pursuant to 42 U.S.C. §1983, which serves as a vehicle for those bringing a cause of action for violation of their constitutional rights under color of law.

17.     Upon information and belief, Defendant MARTHA MCKINNEY ("Prosecutor McKinney" or "McKinney"), was, at all relevant times, an officer, employee, and agent of the Middlesex County Prosecutor's Office, a county-level law enforcement agency of the County of Middlesex, New Jersey. She is sued in her individual and official capacity.

18.     Upon information and belief, Defendant BRIAN GILLET ("Prosecutor Gillet" or "Gillet") was, at all relevant times, an officer, employee, and agent of the Middlesex County Prosecutor's Office, a county-level law enforcement agency of the County of Middlesex, New Jersey. He is sued in her individual and official capacity.

19.     Upon information and belief, Defendant CHRISTOPHER VAN EERDE ("Investigator Van Eerde" or "Van Eerde") was, at all relevant times, an officer, employee, and agent of the Middlesex County Prosecutor's Office, a county-level law enforcement agency of the County of Middlesex, New Jersey. He is sued in her individual and official capacity.

20.     Defendants JOHN and JANE DOES, PROSECUTORS and INVESTIGATORS, 1-20 ("John and Jane Does Prosecutors and Investigators 1-20"), were, at all relevant times, supervisors, directors, prosecutors, investigators, training officers, principals, partners, employees, representatives, agents or agencies of Defendant Prosecutor and any other individual, entity, agency company, or corporation, whose actual identities are presently unknown, who were acting within the scope of their employment, and whose actions assisted and/or contributed to the unlawful, unconstitutional and tortious conduct that resulted in the physical assault and malicious prosecution of Mr. Fakla. They are sued in their individual and official capacities.

21.     Defendants Prosecutor McKinney, Investigator Van Eerde, and John and Jane Does Prosecutors and Investigators 1-20, were at all relevant times, on duty with the Prosecutor on July 1, 2019.

22.     At all relevant times, Defendants McKinney, Van Eerde, and Brian Gillet, and John and Jane Does Prosecutors and Investigators 1-20, acted under the color of law with the power and authority vested in them as officers, agents, and employees of Defendant Middlesex County Prosecutor's Office and incident to the pursuit of their duties as officers, employees, and agents of the Prosecutor.

23.     Defendant officers, prosecutors, investigators, agents, and employees named above shall, at times, be referred to below collectively, as indicated by the attendant facts and circumstances, as "Defendant Prosecutors and Investigators."

24.     Defendant ANN KLEIN FORENSIC CENTER ("Ann Klein") is a state government entity duly incorporated and authorized under the laws of the State of New Jersey. Ann Klein is authorized to maintain mental health services and employ various employees and professionals in the provision of mental health services, including psychological analysis of individuals and care and treatment to individuals suffering from mental illness who are also within the legal system, for which it is ultimately responsible. Ann Klein assumes the risks incidental to the maintenance of its operations and mission and is charged with the care and treatment to individuals suffering from mental illness who are also within the legal system.

25.     Ann Klein was, at all relevant times, responsible for policy making, hiring, supervision, training, control and retention of its employees and professionals. Ann Klein is a person capable of being sued pursuant to 42 USC §1983, which serves as a vehicle for those bringing a cause of action for violation of their constitutional rights under color of law.

26.     Defendants JOHN DOES PSYCHOLOGISTS, PSYCHIATRISTS, EMPLOYEES 1-20 ("Ann Klein John Does 1-20), were, at all relevant times, employees professionals, principals, partners, employees, representatives, agents or agencies of Defendant Ann Klein Forensic Center and any other individual, entity, agency company, or corporation, whose actual identities are presently unknown, who were acting within the scope of their employment, and whose actions assisted and/or contributed to the unlawful, unconstitutional and tortious conduct that resulted in the physical assault and malicious prosecution of Mr. Fakla. They are sued in their individual and official capacities.

27.     Defendants Ann Klein John Does 1-20, were at all relevant times, employees, agents, or contractors with Ann Klein on July 1, 2019.

7

28.     At all relevant times, Defendants Ann Klein and Ann Klein John Does 1-20, acted under the color of law with the power and authority vested in them as officers, agents, and employees of Defendant Ann Klein Forensic Center and incident to the pursuit of their duties as officers, employees, and agents of Ann Klein.

29.     Any of Defendant Ann Klein's, psychiatrists, staff workers, supervisors, investigators, agents, and employees named above shall, at times, be referred to below collectively, as indicated by the attendant facts and circumstances, as "Defendant Psychiatrists."

## FACTUAL BACKGROUND

30.     Mr. Fakla has had a long a tortured history dealing with the Middlesex Borough Police Department ("Middlesex Police") for many years stemming from a series of incidents that started in 2012.

31.     The entire history of the present matter had its origins in what was supposed to be standard police stop in 2012.

32.     Mr. Fakla was pulled over for an alleged DUI and thereafter a series of bizarre events took place. Mr. Fakla contends that the arresting officer and the chief of police caused physical harm to him as well as injecting him with an unknown substance.

33.     On October 28, 2012, Borough officer Mark Melchiorre and another Borough officer stop and arrested Mr. Fakla for suspicion of driving while intoxicated.

34.     Mr. Fakla further contends that while in an interrogation room Chief of Police Matt Geist held him down and while he was handcuffed and screaming for help Chief Geist proceeded to inject a needle into Mr. Fakla's back drugging him. According to Mr. Fakla, he brutally assaulted him and rubbed a substance on his genitals and face and telling Mr. Fakla it was herpes.

35.     During this horrific series of events Mr. Fakla recalls Chief Geist stating how "he wanted to tarnish" Mr. Fakla's image and he "was sick and tired of hearing how good of a person" Mr. Fakla was among other verbal assaults. Chief Geist continued and proceeded to accuse Mr. Fakla of importing drugs from Europe.

36.     At some point during this surreal encounter it became known to Mr. Fakla that Officer Mark Melchiorre went into and searched his house, presumably for contraband, while Mr. Fakla was being molested at the police station. After it was discovered that nothing was in his home, the mood changed, and the torture and molestation ended abruptly for some reason.

37.     Mr. Fakla was held somewhere else in the station suffering from the effects of whatever they had giving him and in a state of horror at what had just happened.

38.     Later, Mr. Fakla was charged with driving under the influence released from custody.

39.     When Mr. Fakla awoke in the morning, he was very disturbed and confused about what took place. He was crying badly and could not eat. His hands were shaking, and he did not know what to do or, at least at first, how badly injured he was

40.     A few weeks later Mr. Fakla obtained legal counsel. Mr. Fakla told him as soon as they met that he wanted the video of what happened in the police station that night and that he wanted the MVR from Officer Arancio the backup officer during the stop.

41.     During the entirety of discovery in the DUI charge, none of Mr. Fakla's requested discovery, especially the internal police video system footage or backup of the patrol officer's AVR was provided to Mr. Fakla. To this day none of that footage has ever been retrieved or viewed.

42.     The molestation of Mr. Fakla at the hands of Borough Officers and their refusal to produce key video evidence in a proceeding that had criminal penalties associated with it, and Mr. Fakla's insistence that the Borough officers be held responsible for the trauma they inflicted on Mr. Fakla while he was in Borough Police custody, lead to what would become an almost ten year nightmare of malicious prosecution and violation of Mr. Fakla's civil rights for trying to uncover the truth.

43.     When Mr. Fakla explained to his defense attorney as to what happened that night, he advised Mr. Fakla to go to seek psychiatric help.

44.     When Mr. Fakla went to court for the DUI on February 5, 2013, he was still very disturbed crying and under duress. He was told by the attorney that when he told the prosecutor what happened to Mr. Fakla, the prosecutor advised Mr. Fakla's attorney that the municipal court judge would not believe what Mr. Fakla was saying and if they went to trial with that and lost, they would put Mr. Fakla in jail for up to ninety days. Under this duress Mr. Fakla plead guilty to the DUI.

45.     The day after his hearing Mr. Fakla began calling countless lawyers to file civil charges against the officers and began calling other law enforcement agencies to launch an investigation. No one would take his case. The state troopers would not answer his emails and the Middlesex County Prosecutor's Office would not speak to him.

46.     Not soon thereafter, Mr. Fakla hired Lou Diana from Gold Shield investigators referred to him by his attorney. Although the investigator made inquiries, Officer Geist and Melchiorre would not speak with the investigator after countless attempts to reach out.

47.     In addition to dealing with legal issues Mr. Fakla reached out to doctors to address the injuries he suffered from his ordeal with the Borough Officers. Mr. Fakla had multiple injuries,

which were from the injection site from the injection he received and Post-Traumatic Stress Disorder ("PTSD") from the events that transpired, including his injury. These would be continuing and would get worse over time.

48.     After nothing came out of the private investigators the investigators told Mr. Fakla to do apply for an Internal Affairs investigation to be initiated against the Borough Police though the Middlesex County Prosecutor's Office.

49.     On or around August 1, 2013, Mr. Fakla tried to do an internal investigation with Lt. Colocci at Middlesex Borough police department. Mr. Fakla lets him know all of the details of what transpired and medical documents Mr. Fakla had from being examined after the ordeal supporting this. Once again, Mr. Fakla notes that he wants the video of the interrogation room along with the backup officers MVR. At that time, he states to Mr. Fakla that he would obtain these for him but never did.

50.     After several months of getting no answers and him not returning Mr. Fakla's calls and also Mr. Fakla's attempts to reach out to Middlesex County Prosecutors and State Police failed. After these failed attempts, Mr. Fakla became very upset and started having breakdowns from what has been diagnosed as PTSD from the events that occurred that night.

51.     Mr. Fakla's demands, and relentless pursuit of the truth eventually led to him getting insistent with the Borough staff for production of the sought-after evidence and for an internal report to be issued regarding the incident.

52.     Eventually the lack of production of any evidence or investigation report led Mr. Fakla to become more insistent with the release of these things, that he would be charged with terroristic threats and stalking.

53.      These charges would lead to an earlier attempt (the "First Malicious Prosecution")

to improperly commit Mr. Fakla, by the Defendant Prosecutor maliciously, recklessly, and intentionally misusing the legal system to improperly commit Mr. Fakla, outside the dictates of the civil commitment system, starting on February 5, 2016, where Mr. Fakla was remanded to jail because he would not voluntarily commit himself. This would lead to an unwarranted and unsubstantiated two-year involuntary incarceration of Mr. Fakla at the Ann Klein Forensic Center. Mr. Fakla was eventually released of on December 12, 2017, when the charges against him were dismissed without prejudice unilaterally, sua sponte, by the Middlesex County Prosecutor's Office, in conjunction with Judge Paone.

54.     On February 5, 2016, Judge Weisberg remanded Mr. Fakla to jail because he would not voluntarily commit himself to an inpatient hospital but also set Mr. Fakla's bail at $100,000.00 which was not ten percent which was not proportionate to the alleged harm. Mr. Fakla stayed there until he was sent to Trenton Psychiatric on April 28, 2016, and released after October 16, 2016, even though the State was only legally allowed to hold Mr. Fakla for a thirty-day evaluation. For the next year they continued to send Mr. Fakla for psychiatric evaluations and continued these assaults on his life and sanity until the case was dismissed on December 12, 2017.

55.     Judge Paone then took over the case on or around September 27, 2016. The entirety of this matter can be found under indictment numbers 16-03-00488-I and 14-06-00688-I.

56.     Strangely, Judge Joseph Paone, J.S.C. presided over the First Malicious Prosecution matter, as he did over what forms the basis of this present matter which finally saw the whole charade dismissed with prejudice.

57.     Essentially the earlier events as detailed in the First Malicious Prosecution matter the inability to harass and dominate Mr. Fakla and have him committed involuntarily outside the civil commitment system, during those events directly led to a series of other events which form

the basis of the present complaint and try to do the same thing a second time.

58.     During what transpired during the events stemming from the 2012 incidents, Mr. Fakla was physically tortured and subject to involuntary medical treatments. Form these incidents Mr. Fakla now suffers from PTSD and other neurological conditions.

59.     Mr. Fakla attempted to bring the skullduggery, physical abuse, and abuse of process of the Middlesex Police to the attention of the Middlesex County Prosecutors Office and others about this, during the course of which it was discovered by Mr. Fakla that crucial video evidence of his physical abuse and forced medical treatment in the form of a forced injection went missing.

60.     Essentially Mr. Fakla's efforts to uncover the truth led nowhere and with no punitive measures being taken by the proper overseeing authorities, in this case the Middlesex County Prosecutor's Office. In the end, Mr. Fakla's attempt to rectify the abuse of process by the Middlesex Police stemming from the events that unfolded in 2012 would lead to future reprisals by the Middlesex Police and other public entities for daring to expose these injustices and abuses.

61.     The ongoing harassment, intimidation, and threats to Mr. Fakla and his wellbeing are the basis for the Conspiracy Count as averred in this Complaint and are what formed the genesis of the series of events that Mr. Fakla now seeks relief and punitive measures to be taken by the Court.

## FACTS COMMON TO ALL CLAIMS

62.     On or around April 4, 2019, Middlesex Police pulled Mr. Fakla over to harass Mr. Fakla for allegedly driving through town and making false claims about Mr. Fakla being illegally parked on a dead-end street. They don not cite Mr. Fakla with any violations of law at that time.

63.     On or around April 8, 2019, Chris Van Eerde of the Middlesex County Prosecutors officer comes to Mr. Fakla's house to question him about driving through Middlesex Borough and

tells Mr. Fakla to come into the office and he will do a different investigation, separate to what was done before claims about Middlesex Police in 2012.

64.     On June 6, 2019, Mr. Fakla reached out via email to Chris Van Eerde per their April 8, 2019, conversation.

65.     On June 14, 2019, Mr. Fakla went to the Middlesex County Prosecutor's Office to file a criminal report against Middlesex Police. Chris Van Eerde met Mr. Fakla there and referred Mr. Fakla to Detective Deon McCall.

66.     On June 14, 2019, Mr. Fakla spoke with Deon McCall and Joseph Chesseri (an officer who handled the earlier complaints regarding the Middlesex Police in the past). At that time, Mr. Fakla tried to provide evidence to the investigators so as to corroborate his account and have a proper investigation done, and the investigators refused to take any of Mr. Fakla's doctors reports or do a proper investigation into what happened. Once again, Mr. Fakla inquired about the missing videos from the 2012 incidents and the investigators did not give him any answers to his concerns of where videos went or why there was not a proper investigation done.

67.     On July 1, 2019, Deon McCall responded to Mr. Fakla's emails sending him an investigation that was done previously without addressing any of Mr. Fakla's questions or concerns and knowingly triggering Mr. Fakla's PTSD as they have done in the past and resulting in the charges against him.

68.     On July 2, 2019, Mr. Fakla is arrested for eluding, even though at the time that Middlesex police officers tried to pull him over he called 911 and was told by the Middlesex Police Dispatcher to go home. Four hours later, Middlesex Police showed up at Mr. Fakla's house and arrest him for eluding. Upon arrest Mr. Fakla is taken to the Middlesex County Jail where he is stripped naked and thrown me in jail cell high visibility medical for days being inhumanly treated.

69.     On July 5, 2019, Middlesex County Judge Michael A. Toto orders a psychological evaluation and risk assessment and keeps Mr. Fakla in the county jail stating that Mr. Fakla is a danger to himself and others.

70.     On July 9, 2019, a hearing on Mr. Fakla's unfounded incarceration is adjourned.

71.     On July 12, 2019, a hearing was finally held on Mr. Fakla's incarceration at the hands of the Middlesex Police. At the hearing. Chris van Eerde hands a file to prosecutor Deanna Himelson in regard to the last case that was dismissed in 2017 and Mr. Fakla's mental health status. Apparently, unbeknownst to Mr. Fakla, the Prosecutor filed charges for stalking after the fact of the eluding charge during this time. Mr. Fakla thought this odd and likely illegal, as no restraining orders we ever filed by the officers involved in the 2012 Incident even though Prosecutor Himelson is saying there was.

72.     The July 12, 2019, hearing ended still pending a psych evaluation with Mr. Fakla to remain in the jail at this time.

73.     On July 14, 2019, a psychological evaluation is done in jail by Dr. Sandrock which Mr. Fakla never received a copy of, but clearly Mr. Fakla must not have been deemed a threat because he was released several days later.

74.     On July 16, 2019, Mr. Fakla is released from the Middlesex County Jail on the condition that he have an ankle monitor placed on him, even though Mr. Fakla told them it was detrimental to his physical and mental health. Nonetheless, the judge releases Mr. Fakla as he is not deemed a danger and they have no justification to hold me, but with ankle bracelet.

75.     On August 5, 2019, Judge Paone orders a competency hearing for Mr. Fakla to stand trial.

76.     On August 21, 2019, Mr. Fakla goes to Middlesex County Prosecutors office to file

15

a complaint against Middlesex County Jail for Mr. Fakla's treatment and also the Prosecutor's Office for not doing a proper investigation. Upon entry, they force Mr. Fakla out and would not take his statements.

77.    On August 28, 2019, Mr. Fakla made numerous phone calls and emails to the attorney general still trying to get someone to speak to him and acknowledge what is going on here. Assistant Prosecutor Max Henry would not address anything and ignored Mr. Fakla's prescient requests and demands for an investigation. Supervisor Mr. Augustyn and Veronica Allende would not return Mr. Fakla's calls or speak to him.

78.    On September 16, 2019, a court hearing was held whereby Judge Toto sent Mr. Fakla to what was sent to Robert Wood Johnson for a psychiatric evaluation after Mr. Fakla's request for ankle bracelet to be removed for health reasons.

79.     On September 18, 2019, Robert Wood Johnson stated there was no medical necessity for impatient treatment and is forced to discharge him.

80.    On September 20, 2019, court hearing is held in regard to further evaluation of Mr. Fakla's and bracelet being removed. Mr. Fakla then spoke with Ms. Jannone, who was with pretrial services. She states to Mr. Fakla he can do whatever I want as long as he is home by eight o'clock. This admission by Ms. Jannone is important because later, in January 2020 in subsequent hearing, contradicting statements are made when Mr. Fakla's liberty is at stake.

81.    On December 24, 2019, unexpectedly the bracket broke on Mr. Fakla's ankle bracelet and Mr. Fakla drove home and called pretrial services. Immediately, they detained Mr. Fakla for absolutely no reason, and they stripped him naked and left him for days in Middlesex County Jail without basis. While he was incarcerated, he was given medication the was detrimental to Mr. Fakla's health with all the nerves in his face were firing uncontrollably. None of the nurses

wanted to help address the situation. The social worker did not help Mr. Fakla throughout the time he was incarcerated, nor did she want to address what transpired.

82.     On January 2, 2020, hearing took place as to ankle monitor breaking before Judge Paone. Without any basis, alleged Mr. Fakla tampered with the bracelet, and that he took it off.

83.     On January 3, 2020, Evan Sullivan, a pre-trial services representative, testified without having ever spoken to Mr. Fakla, and without any evidentiary basis and likely perjured himself under oath. Edward Sullivan continuously stated that Mr. Fakla tampered with the band and the fiber optics were cut without any basis. At the hearing Mr. Sullivan admits to making assumptions not based on evidence.

84.     On January 10, 2020, hearing held where Dr. Peter Paul, of Ann Klein Forensic Center, provided testimony as to his report provided to the Court in November 2019. In the court hearing, upon examination of Dr. Paul by Mr. Fakla's counsel, Dr. Paul states Mr. Fakla was not a danger, and it was likely that the continued pursuit of Mr. Fakla all these years could function as a trigger with various trigger events, seemingly perpetrated by both the Middlesex Borough Police and the Middlesex Prosecutor's Office.

85.     During the January 10, 2020, hearing Prosecutor Martha McKinney during the course of the hearing, obviously not agreeing with Dr. Paul's opinion, openly threatens Mr. Fakla with medication and involuntary commitment using her examination of Dr. Paul as a foil to besmirch Mr. Fakla and by proxy attacked Dr. Paul's opinion. McKinney is so adamant and abusive where she, without basis also brings up cases going back as far as 2006 in order to further assail the Dr. Paul's opinion and further tarnish Mr. Fakla's reputation and do whatever she could to improperly have Mr. Fakla committed at that hearing. The hearing ended with Mr. Fakla being incarcerated without basis and even after the Dr. Paul report and testimony stated Mr. Fakla was

not a danger and should be released. Judge orders the continued detention of Mr. Fakla pending further evaluation, even after the protestations of Mr. Fakla's Counsel and Dr. Paul's testimony.

86.    At the end of the January 10, 2020, hearing the judge allows the prosecutor another thirty days to get yet another evaluation, as obviously Dr. Paul's evaluation was not what the Prosecutor's office wanted to hear. A new hearing date was set for February 21, 2020, to have yet another psychologist evaluates Mr. Fakla and provides a report and testifies at the hearing.

87.    On February 21, 2020, the hearing the judge ordered on January 10, 2020, where a new, and yet another psychologist was to opine as to Mr. Fakla's mental status and competency, Martha McKinney, instead of supplying the expert and a new report, states her "go to" evaluator is scared for his safety to do the evaluation after hearing some of the circumstances and asks the court more time. At the hearing, they deny Mr. Fakla a release stating Mr. Fakla a danger even though Dr. Peter Paul had just reported Mr. Fakla was not a danger.

88.    On April 9, 2020, at a detention hearing, Mr. Fakla is released without bracelet. Prosecutor still has not had evaluation done after months of stalling.

89.    On April 10, 2020, a letter from Christopher Kuberiet singed by Martha McKinney, to try and recommit Mr. Fakla. The letter purports as to of the dangerousness of Mr. Fakla even after Dr. Paul had a hearing on the matter and was unable to provide any basis for continued psychiatric treatment.

90.    On April 16, 2020, the Prosecutors file a motion to recommit Mr. Fakla to jail. Also trying to put me on an ankle monitor even though its detrimental to Mr. Fakla's health. Judge states there was not any violent behavior, Judge also states he is not satisfied that the Prosecutor met its burden that Mr. Fakla a danger to society. Which again contradict everything that transpires on January 2, 2020, January 3, 2020, and January 10, 2020.

91.     On April 4, 2020, an evaluation of Mr. Fakla is done by Dr. Steven Simring for the ongoing competency evaluation that had already been opined on by a number of other psychologists.

92.     On June 9, 2020, a hearing is held where Mr. Fakla's attorney asks for the internal affairs investigation of what transpired as result of Mr. Fakla's arrest in 2012 to be released. Martha McKinney asks for in-camera review also the State's the other doctor, Dr. Steven Simring's, evaluation would be forthcoming soon and that Internal Affairs Investigation of the events stemming from 2012 should be withheld and under tight seal. This was yet another example of the maliciousness of the prosecution dragging out an improper proceeding that did not work the first time they tried it leading to further deprivation of Mr. Fakla's liberty.

93.     On June 15, 2020, at a hearing for competency for Mr. Fakla to stand trial, Prosecutor McKinney states Mr. Fakla is competent but what he had been averring since 2012 in regard to the Middlesex Borough Police did not happen to him. At this hearing, Prosecutor McKinney makes unnecessary threats that include having Mr. Fakla forcibly injected with drugs and involuntary commitment, without any basis in fact or law.

94.     On July 13, 2020, at a motion hearing for the various internal investigations sought by Mr. Fakla as to the events from 2012 to be released, Martha McKinney wants a gag order issued suppressing the internal investigation done by the Middlesex Police and the Middlesex County Prosecutor's Office. Nothing gets decided at this hearing and the Court concludes and continues to unreasonably and arbitrarily deny Mr. Fakla his freedoms and disregard his health.

95.     On August 17, 2020, Mr. Fakla filed a complaint to Supervising judge, Judge Flynn.

96.     On August 25, 2020, David Cooper, who was Mr. Fakla's treating psychologist at that time, sends Mr. Fakla to Rutgers University Behavioral Health Center ("UBHC"), as Mr.

Cooper had shown concerned for Mr. Fakla's safety. At this meeting, the UBHC threatened Mr. Fakla with medication.

97.     While at the UBHC, UBHC Wouldn't give Mr. Fakla any insight into his diagnosis when Mr. Fakla asked them to justify it. UBHC continued to claim PTSD to Mr. Fakla when in the facility but wrote otherwise in the records. At the facility, they threatened to have Mr. Fakla involuntarily committed and also completely disregarded Mr. Fakla's treating doctors' reports.

98.     On August 31, 2020, a letter is issued from UBHC trying to civilly commit Mr. Fakla.

99.     Strangely, even after stating that UBHC was seeking commitment of Mr. Fakla on August 31, 20202, on September 2, 2020, UBHC issues a discharge letter as they had no justification to hold Mr. Fakla.

100.    On September 4, 2020, Mr. Fakla reached out to several supervisors at UBHC to file a complaint. Avis Scott was who Mr. Fakla was referred to, gave no justification to why Mr. Fakla had been processed by UBHC in the first place, why they at one point sought commitment, but then randomly released Mr. Fakla from their care saying there was nothing they could do for him and had no basis to hold him further or commit him.

101.    On September 23, 2020, at yet another competency hearing, this time with another expert produced by the Middlesex County Prosecutor's Office, there was an examination done by the Middlesex County Prosecutor with Dr. Simring. Without any substantiation, or scientific fact, Dr. Simring states that Mr. Fakla is a danger to society.

102.    On or around September 23, 2020, Mr. Fakla emails and makes numerous phone calls to the Board of Medical examiners to file a complaint against the doctors at UBHC and Dr. Simring for malpractice.

103.    On November 12, 2020, at a hearing on competency, Dr. Simring is cross examined which they did not provide Mr. Fakla the video for as requested. Dr. Simring cannot provide justification for his diagnosis nor cite why he did not consider Mr. Fakla's medical records. Although Defendants Matthew Geist and Mark Melchiorre were subpoenaed to appear into court, they both arrived to court that day but remained outside and were never asked to testify or justify any of their claims that they were scared for their lives that Mr. Fakla should be committed. Once again, no basis for the allegations is substantiated by any of the so-called aggrieved parties who somehow felt their lives were threatened. Once again, no inquiry is made directly to the so-called aggrieved parties, the same individuals who did not bother to file for a restraining order or take any other action available to them at law, besides using what had become an unlawful attempt using the criminal justice system to achieve civil commitment of Mr. Fakla for speaking out about their misdeeds.

104.    On November 25, 2020, Prosecutor Brian Gillet files a brief to try and persuade the judge to commit Mr. Fakla even after the numerous times the judge told him they have other avenues, and he does not have the power to do so. Judge also scolds the Prosecutor for holding the charges in abeyance to control Mr. Fakla during the pendency of the prolonged and protracted bogus competency evaluation for which the prosecutor keeps seeking experts to opine the way they wanted the expert to opine, something that the judge also wanted address. This is all in the context of that the Prosecutor's office had tried the same thing from roughly 2012 through 2017 and failed.

105.    On December 14, 2020, Mr. Fakla's attorney responds to the Prosecutor's November 25, 2020, motion, and files for dismissal.

106.    On December 22, 2020, at yet another competency hearing, Brian Gillet talks on

21

the record about how he, Brian Gillet, without any basis in fact, thinks Mr. Fakla is dangerous but will not take the avenue of civil commitment of Mr. Fakla which is a direct contradiction and shows he was malicious in the use of the Justice system.

107.    On December 23, 2020, Mr. Fakla files a complaint against Judge Paone with the New Jersey Superior Court describing the years of torture and malicious prosecution at the hands of the Defendants without ever being provided an answer for where the video evidence was or went to from the night of October 28, 2012.

108.    On March 30, 2021, only after several months of filing his complaint against Judge Paone the case is dismissed with prejudice. At the hearing the Prosecutor's Office attempted to bring in Rutgers UBHC to try, once again, to involuntarily committing Mr. Fakla, but in the end, the Prosecutor's Office did not take any of the avenues they could and should have taken to commit Mr. Fakla. It was clear at that time, based on what the judge ruled that the Prosecutor's office working in conjunction with the Middlesex County Borough Police were trying to illicitly use the justice system to detain Mr. Fakla without addressing the situation as a whole.

109.    Upon dismissal that the ordeal suffered by Mr. Fakla since 2012, had been nothing more than a witch hunt against Mr. Fakla for trying get to the truth of the matter of Mr. Fakla's arrest in 2012. This was made perfectly obvious with the dismissal with prejudice, as the first attempt at the Middlesex County Prosecutor's Office at doing this from 2012-2017 was unsuccessful and had been dismissed by the same judge, Judge Paone, without prejudice. This unfortunate adjudication did not allow for double jeopardy to attached, or for liability for malicious prosecution to inure to Defendants, leading to the present matter which was a result of the judge not initially dismissing the matter with prejudice as no evidence existed and for the legal reasons the judge cited in dismissing the second matter were the same for the first matter. As a result of

the obvious maliciousness of the criminal prosecution against him and therefore filed a tort claim notice on or around June 23, 2021, to the responsible entities. (See **Exhibit A** - Copy of Tort Claim Notice sent on or around 06/23/2021 with sheet with the tracking information for said Tort Claim Notice).

110.    Plaintiff files the present litigation seeking damages for violations of his Constitutional rights to due process and equal protection; humiliation; embarrassment; inconvenience; mental and emotional anguish and distress; exasperation of priorly inflicted physical injuries, and other compensatory damages in an amount to be determined by a jury and the Court. Plaintiff seeks further relief by way of a Declaratory Judgment declaring that the Borough of Middlesex and the Middlesex County Prosecutor's misappropriation of the legal system in trying to have Plaintiff involuntarily committed is unconstitutional and enjoining the Borough of Middlesex Police Department and the Middlesex County Prosecutor and their agents from further implementation of this unconstitutional policy.

### **FIRST COUNT**
PATTERN AND PRACTICE ALLEGATIONS
(Municipal and Governmental Liability pursuant to N.J.S.A. §§ 2C:30-2 and 2C:30-7)

111.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

112.    Police Officers employed by the Borough of Middlesex, have a long, systematic, and documented history of aggressive police practices, including falsifying reports, fabrication of evidence, cover-ups, sham internal affairs investigations, malicious prosecution, retaliation, profiling, and use of excessive force against Mr. Fakla.

113.    The Borough, through its police department, developed, implemented, enforced,

encouraged, and sanctioned a de facto policy, practice and/or custom of maliciously prosecuting and engaging in the use of illegal and excessive force on Mr. Fakla and coverup of these incidents. In the past eleven (11) years, the Borough has received numerous documented incidents of use of force, including use of excessive force, false arrest, false reporting, malicious prosecution, and profiling of Mr. Fakla.

114.    The unlawful stopping, excessive and unreasonable use of force, filing of false charges, malicious prosecution of Mr. Fakla, and the subsequent cover up of the incident by the Borough and its Police Department, was not an isolated or aberrational incident. It was the direct result of systemic deficiencies in the training, supervision, and discipline of Borough Police Officers, including Chief Geist and Officer Melchiorre, against Mr. Fakla that began in 2012 and continues against Mr. Fakla to this day.

115.    Prior to and after the July 1, 2019, unlawful stop, unprovoked use of excessive force and malicious prosecution against Mr. Fakla, the Borough was on notice that there was a pervasive and systemic pattern, custom and practice of constitutional violations within its Police Department toward Mr. Fakla over the course of almost ten years. There were numerous incidents, complaints, falsifying reports, filing of false charges, malicious prosecution, coverups, profiling and differential bias treatment by Borough Police Officers due to the incidents described in Paragraphs 1 through 108 in this Complaint, starting in 2012 against Mr. Fakla for which there was a number of complaints and internal affairs investigations initiated by Mr. Fakla with the Borough and the Prosecutor.

116.    The Borough, through its Internal Affairs Department, has engaged in a past practice and policy of exhibiting deliberate indifference to Mr. Fakla's complaints of constitutional violations against its police officers from Mr. Fakla, against police officers who were employed

24

by or act as agents of the Borough for which the Borough has been placed on notice by Mr. Fakla starting as early as 2012.

117.    The Borough's Internal Affairs department is a complete sham, and its long standing systematic, pervasive actual and/or de facto policies and practices create an environment wherein officers are comfortable in knowing they can act unlawfully without any repercussions or discipline. Such past policy and practice are directly linked to the violation of the constitutional rights of Mr. Fakla because such past policy and practice encourage violations by police officers, such as the individually named Defendants.

118.    Defendants, collectively and individually, while acting under the color of law, engaged in conduct that constituted a custom, policy, usage, practice, procedure, or rule of Defendant Borough of Middlesex, which is forbidden by the New Jersey State Constitution.

119.    The afore-mentioned customs, policies, usages, practices, procedures and rules of the Borough of Middlesex, and the lack of training and discipline for the unconstitutional actions of its police officers resulted in the filing of false charges, abuse of process, and malicious prosecution of Mr. Fakla; conspiracy to deprive Mr. Fakla of his civil rights; creation of false reports, perjury, withholding of evidence and cover up.

120.    The Borough engaged in a policy, custom and practice of inadequate screening, hiring, retaining, investigating, disciplining, training, and supervising its employees, which was the moving force behind the violation of Mr. Fakla's constitutional rights described herein.

121.    The foregoing customs, policies, usages, practices, procedures, and rules constitute deliberate indifference to the safety, well-being and State constitutional rights of Mr. Fakla and was the direct and proximate cause and the moving force of the constitutional violations suffered by Mr. Fakla.

122.   The Borough provided grossly deficient training and supervision to its Police Officers, including the individual named Defendants Officers, concerning for example, searches and seizures, use of force, pursuit, traffic stops and investigations, report writing, obtaining warrants, false arrest, malicious prosecution, and Internal Affairs Investigations, despite actual and/or constructive notice that its officers were improperly trained, lacked discipline, and were violating minimally accepted police practices.

123.   Defendant Borough of Middlesex failed to investigate misconduct on the part of its police officers, failed to properly investigate Internal Affairs complaints against its officers, including the named Defendants Officers, failed to report instances of illegal criminal behavior and Official Misconduct to the County Prosecutor, and failed to discipline its officers prior to and including in this case.

124.   The Borough was negligent and/or reckless in the hiring and retention of Police Officers, including the individual named Defendant Officers.

125.   The Borough failed to provide its officers, including the individually named Defendants, with the guidance, oversight, and resources they need to police safely, constitutionally, and effectively.

126.   Despite knowing of the false reporting and perjured testimony provided by two separate state experts at multiple hearings, which clearly revealed official misconduct by these Defendants, the Borough failed to conduct an adequate Internal Affairs investigation into Chief Geist and Officer Melchiorre' s conduct; failed to take any disciplinary actions against them; and what was reported to the County Prosecutor was suppressed and hidden as part of a larger conspiracy to have Mr. Fakla committed using unlawful and malicious means, as shown in the two separate attempts to have Mr. Fakla committed outside the civil commitment system.

127.    Likewise, the Borough failed to adequately investigate the illegal, unreasonable, and excessive use of force against Mr. Fakla or take appropriate disciplinary action against Chief Geist and Officer Melchiorre, despite its knowledge of their illegal conduct and of numerous prior allegations of misconduct and the use of excessive force against these Defendants and other officers employed by the Borough.

128.    In addition to the actions of Borough police personnel, various employees, contractors, and/or agents of the Middlesex County Prosecutor's Office compounded the acts of the aforementioned Borough police officers by engaging in two separate futile, malicious, and vicious litigations that needlessly ruined Mr. Fakla's life and caused years of unnecessary incarceration and abuse.

129.    As a result of Defendant Borough of Middlesex's and the Middlesex County Prosecutor's Office's failure to properly screen, hire, retain, train, supervise, investigate and discipline its employees, the Borough explicitly and implicitly authorized, ratified and condoned Defendants Geist, Melchiorre, McKinney, Vaneerde, and John Does 1-20's illegal conduct, and has been deliberately indifferent to the acts and conduct complained of herein.

130.    All the acts and omissions committed by Defendant Prosecutors described herein for which liability is claimed were done unlawfully, maliciously, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

131.    All the acts and omissions committed by Defendant Prosecutors described herein for which liability is claimed were conducted in their individual and official capacities.

132.    Defendant Geist is the chief executive officer of the Borough of Middlesex and therefore is charged with establishing all policies for its Police Department, either express or de facto.

133.     As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff was deprived of his liberty and suffered economic loss in the form of loss of his ability to meet his financial obligations, including but not limited to the resultant impact upon his credit, damage to his reputation, damage to his career, invasion of his right to privacy, mental pain and suffering and emotional distress, as well as other non-economic damages for which Defendants are liable.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

A.     Sanctions;

B.     Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.     Punitive damages;

D.     Attorneys' fees, interest and costs of suit; and

E.     Any other relief as the Court deems just and equitable.

## SECOND COUNT
Unreasonable and Excessive Force
(42 U.S.C. § 1983)

134.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

135.     Defendants Geist and Melchiorre's unlawful, careless, negligent, and reckless acts of assaulting Mr. Fakla and the use of unreasonable and excessive force without justification or provocation, showed deliberate indifference for the life and safety of Mr. Fakla.

136.     Defendant Geist and John Does 1-20, had a duty to but failed to prevent the unlawful and unwarranted use of excessive force upon Mr. Fakla.

137. Defendants Geist and John Does 1-20's, negligent, careless, and reckless act of conspiring to use excessive force and/or their failure to intervene to prevent the unlawful and unreasonable use of excessive force against Mr. Fakla, showed deliberate indifference for the life and safety of Mr. Fakla.

138. In all the foregoing, Defendant Officers acted with reckless, callous, and deliberate indifference to Mr. Fakla's constitutionally protected rights.

139. Defendant Officers violated clearly established law. No reasonable officer could have believed, under the circumstances, that it was lawful to stop, arrest, use excessive force, charge, or maliciously prosecute Mr. Fakla, given that he posed no threat to Defendants Geist and Melchiorre, who abused and traumatized Mr. Fakla during the processing after a routine DUI arrest.

140. The incidents surrounding Mr. Fakla's 2012 arrest led to approximately nine years of malicious prosecution that finally ended in March of 2021 when the second attempt to maliciously prosecute Mr. Fakla was dismissed with prejudice.

141. By their conduct, Defendants Geist, Melchiorre, and John Does 1-20, deprived Mr. Fakla of his right to be free from the use of excessive and unreasonable and the right to be free from malicious prosecution under the Fourth and Fourteenth Amendment of the United States Constitution.

142. The Borough of Middlesex is liable for creating, implementing, and enforcing policies, practices, and customs as aforesaid, that resulted in the unlawful use of excessive force and malicious prosecution of Mr. Fakla.

143. As a direct and proximate result of Defendant Officers' misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.    Any other relief as the Court deems just and equitable.

### THIRD COUNT
Malicious Prosecution
(42 U.S.C. § 1983)

144.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

145.    Defendants Geist, Melchiorre, McKinney, Vaneerde, Gillet, and John Does 1-20, acting in their individual and official capacity as employees of Defendant Borough of Middlesex and the Middlesex County Prosecutor's Office and within the scope of their employment, filed false charges against and maliciously prosecuted Mr. Fakla, an innocent person, without probable cause, and without basis in the law.

146.    Defendants Geist, Melchiorre, McKinney, Vaneerde, Gillet, and John Does 1-20, acting in their individual and official capacity as employees of Defendant Borough of Middlesex and the Middlesex County Prosecutor's Office and within the scope of their employment, engaged in an abuse of process when they falsely charged and maliciously prosecuted Mr. Fakla, an innocent person, in retaliation for Mr. Fakla's prior complaints against the Borough stemming

from events starting in 2012 as detailed in Paragraphs 1 through 114 of this Complaint.

147.    Defendants Geist, Melchiorre, McKinney, Vaneerde, Gillet, and John Does 1-20, acting in their individual and official capacity as employees of Defendant Borough of Middlesex and the Middlesex County Prosecutor's Office and within the scope of their employment, knowing that Mr. Fakla could not be committed using the criminal justice system, as was shown from the first attempt made in 2016/2017 to have him involuntarily committed, decided to proceed a second time from 2019 until March 2021 to attempt the same failed strategy which had not worked in 2016/2017 and maliciously attempt the same tactics, until finally, the matter was dismissed with prejudice in March of 2021.

148.    Despite the knowing of the existence of video and audio of the interrogation of Mr. Fakla at the Middlesex Borough Police Station which vindicated Mr. Fakla, and the lack of any statements or evidence by Defendants Geist and Melchiorre to prove contrary. The charges started in 2013 and continued until 2017, with another set of charges taking place during the original incident in 2015, to the events described by Mr. Fakla as to his original arrest in 2012, Defendants continued to maliciously prosecute Mr. Fakla for almost two years under a new set of charges, asserting the same claims that had been asserted in their attempts to prosecute Mr. Fakla in 2016/2017 under the same failed theory of mental instability which was not cognizable in the criminal justice system. All of this stemmed from Mr. Fakla's attempt to have what occurred to him in 2012 investigated and revealed so as to bring the perpetrators to justice and have their badges taken.

149.    Despite knowing of the existence of video which vindicated Mr. Fakla and the complete lack of evidence never submitted by Defendant Borough of Middlesex, failed to further investigate, contributed to, and permitted the prosecution of Mr. Fakla, maliciously and without

probable cause, by the Middlesex County Prosecutor's Office, who acquiesced and were an accessory to the Borough of Middlesex's efforts to personally destroy Mr. Fakla's life.

150.    The malicious prosecution of, and damages to Mr. Fakla resulting from the Defendants conduct as described herein, continued even after Defendant Middlesex County Prosecutor, unsuccessfully tried to prosecute Mr. Fakla for essentially the same charges, which failed the first time. Both times the Middlesex County Prosecutor's office sought a remedy that was ultra vires and not allowable by law. The first attempt at malicious prosecution was not addressed as the matter was dismissed without prejudice, thus the entire chain of malicious prosecution of Mr. Fakla ended on March 31, 2021.

151.    Defendants, including the Borough of Middlesex County and the Middlesex County Prosecutor's Office, are responsible for the false evidence, in the form of false charges and false and unsubstantiated expert testimony, upon which the malicious prosecution was based, as well as engaging the misuse of the legal system to achieve a result not allowed by law and is ultra vires.

152.    Defendants' actions in the presentation of false evidence and net opinions of cherry-picked experts, upon which Mr. Fakla was arrested, charged, prosecuted, and incarcerated, was without probable cause and was reckless and malicious.

153.    By their unlawful conduct and abuse of authority, Defendants, under color of law, deprived Mr. Fakla of his right to be free from malicious prosecution and abuse of process under the Fourth and Fourteenth Amendment to the United States Constitution and under the New Jersey State Constitution, thereby depriving him of his liberty without due process of law.

154.    Defendants, collectively, are liable for their failure to take any reasonable steps to protect Mr. Fakla from being maliciously prosecuted, despite having ample evidence, time, and

opportunity to do so.

155.    In all the foregoing, Defendants initiated the prosecution of Mr. Fakla without probable cause and with reckless, malicious, callous, and deliberate indifference to Mr. Fakla's constitutionally protected rights.

156.    The malicious prosecution was the act of Defendants jointly, and Defendants are jointly and severally liable for damages to Mr. Fakla.

157.    The Borough of Middlesex and the Middlesex County Prosecutor's Office are liable for creating, implementing, and enforcing policies, practices, and customs as aforesaid, that resulted in the malicious prosecution of Mr. Fakla.

158.    Defendant Borough of Middlesex, as employer of Defendants Geist, Melchiorre, and the Middlesex County Prosecutor's Office, as employer of Defendants McKinney, Vaneerde, and Gillet, and John Does 1-20, are responsible for their wrongdoing under the doctrine of respondent superior and pursuant to the New Jersey Tort Claims Act, N.J.S.A. § 59-2-2, et seq.

159.    As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

A.      Sanctions;

B.      Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.      Punitive damages;

D.      Attorneys' fees, interest and costs of suit; and

E.      Any other relief as the Court deems just and equitable.

## FOURTH COUNT

### (42 U.S.C. § 1985 - Conspiracy)

160.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

161.    Despite knowing of the existence of dash-cam video and audio of the stop and the interrogation room at the station, Defendants Geist and Melchiorre, conspired to conceal the true nature of the incident by unlawfully creating false reports of the incident in furtherance of their conspiracy to frame Mr. Fakla.

162.    The Borough and members of its Police Department, including the individually named Defendants, engaged in a conspiracy to coverup the true circumstances surrounding the arrest and prosecution of Mr. Fakla; failed to adequately investigate the illegal, unreasonable, and excessive use of force against Mr. Fakla; and failed to take appropriate disciplinary action against Defendants Geist and Melchiorre, despite knowledge of their illegal conduct and despite knowledge of numerous prior allegations of misconduct, including the use of excessive force against Defendants and other officers employed by the Borough.

163.    Defendants Geist and Melchiorre, and John Does 1-10, under color of state law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to cover up the true nature of the incident and to injure, oppress, threaten, and intimidate Mr. Fakla in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the United States Constitution, including the his clearly established right to be free from unlawful search, seizure, detention and arrest; the right to be free from malicious prosecution; the right to privacy; and the right not to be deprived of his liberty without due process of law.

164.    Defendants Officers took numerous overt steps in furtherance of such conspiracy, as set forth above.

165.    Defendant Borough of Middlesex is liable for creating, implementing, and enforcing policies, practices and customs as aforesaid, that resulted in the conspiracy against Mr. Fakla.

166.    Defendant Borough of Middlesex, as employer of Defendants Geist and Melchiorre and John Does 1-20, are responsible for their wrongdoing under the doctrine of respondent superior and pursuant to the New Jersey Tort Claims Act, N.J.S.A. § 59-2-2, et seq.

167.    As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, JOHN FALKA, demands the following relief against Defendants:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.    Any other relief as the Court deems just and equitable.

## FIFTH COUNT
(42 U.S.C. § 1983-Supervisor Liability)

168.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

169.   Defendant Borough of Middlesex and The Middlesex County Prosecutor's Office had a duty to properly supervise its employees and failed to do so.

170.   John, and Jane Does 1-20, were, at all relevant times, supervisory personnel for the Borough's Police Department, with oversight responsibility for Defendant Melchiorre, and John Does 1-20. They were responsible for the hiring and firing, instruction, supervision, correction and discipline, and training of all officers, including the named Defendants, on all aspects of law enforcement procedures, including the use of force, arrest procedures, pursuit, conducting traffic stops, proper investigative techniques, and evaluation of what constitutes a proper determination of probable cause.

171.   Defendants Geist and JOHN DOES 1-20, as supervisory personnel in the Borough of Middlesex's Police Department, owed a duty of care to Mr. Fakla to prevent the conduct alleged, which foreseeably caused his injuries and violation of his civil rights.

172.   Based on prior conduct and complaints against Defendants Geist and Melchiorre, and John Does 1-20, Defendants knew, or in the exercise of due diligence should have known that if they failed to properly supervise and discipline Defendants, the inappropriate, unlawful, and tortious conduct of Defendants against Mr. Fakla was likely to occur.

173.   Defendants failed to take preventive and remedial measures to guard against the constitutional violations committed by Defendants Geist and Melchiorre, and John Does 1-20. Had they taken the appropriate action, Mr. Fakla would not have been continuously maliciously prosecuted by the Borough and the Middlesex County Prosecutor's Office.

174.   Defendants' failure to supervise and discipline Defendants Geist, Melchiorre, McKinney, Vaneerde, Gillet, and John Does 1-20, amounted to negligence, gross negligence, deliberate indifference, or reckless misconduct which directly caused and was the moving force

behind the constitutional deprivations Mr. Fakla suffered.

175.    Defendant Borough of Middlesex and the Middlesex County Prosecutor's Office are liable for creating, implementing, and enforcing policies, practices, and customs as aforesaid, that resulted in the constitutional deprivations Mr. Fakla suffered.

176.    As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.    Any other relief as the Court deems just and equitable.

## SIXTH COUNT
(Negligent Hiring/Training/Retention/Supervision)

177.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

178.    Defendant, Borough of Middlesex, was responsible for the recruiting, hiring, training, retention, and ongoing supervision of Borough Police Officers, including Defendant Officers.

179.    The Borough had a duty to properly ascertain employees' fitness to become police officers before they were hired but failed to do so.

180.    The Borough had a duty to properly train the officers in its employ to ensure they did not violate the constitutional rights of citizens, including Mr. Fakla, but failed to do so.

181.    The Borough had a duty to adequately supervise the officers in its employ to ensure they did not violate the constitutional rights of citizens, including Mr. Fakla, but failed to do so.

182.    The Borough failed to properly determine the fitness of Chief Geist, Officer Melchiorre and Police John Does, 1-20, to be hired as police officers, chiefs, sergeants, lieutenants, supervisors and investigators of the Borough and failed to properly train these Defendants to ensure they would not violate the civil rights of its citizens, such as Mr. Fakla.

183.    The Borough knew, or in the exercise of due diligence should have known that Defendants were not fit for duty and that the inappropriate, unlawful, and tortuous conduct of Defendants Chief Geist, Officer Melchiorre and Police John and Jane Does, 1-20, against Mr. Fakla was likely to occur.

184.    The Borough was aware of prior allegations of misconduct involving the use of excessive force, coverups, false arrest, falsification of official reports, false charges, and malicious prosecution alleged by citizens against members of the Borough's Police Department, including the named Defendants. Yet, the Borough did nothing to prevent the ongoing unlawful actions of its police officers or to terminate these rogue officers.

185.    The Borough was aware of prior allegations of misconduct against its officers that should have alerted it to the potential unlawful conduct of Defendants Geist and Melchiorre and Police John and Jane Does but failed to take reasonable and appropriate steps to properly train, supervise and discipline Defendants to ensure they did not violate the constitutional rights of citizens, including Mr. Fakla.

186.    Defendants Police John and Jane Does 1-20, as supervisory personnel in the

Borough's Police Department responsible for the hiring and firing, supervision, corrective or disciplinary actions, and training of all officers on all aspects of law enforcement, including proper investigative techniques and evaluation of what constitute a proper determination of probable cause, owed a duty of care to Mr. Fakla.

187.    Plaintiff avers and believes that, upon obtaining discovery, these Defendants will be identified and shown to have failed in their duties and acted with deliberate disregard for their responsibilities to discipline, adequately supervise and/or train police officers, including the named Defendants, in the investigation of motor vehicle stops, investigation of criminal activity, searches and seizures, pursuits, arrest procedures, preparing arrest reports, proper identification of suspects, Internal Affairs Investigations, as well as the evaluation and reliability of evidence used in the determination of probable cause.

188.    Plaintiff avers that discovery will show Defendant Borough of Middlesex through its Police Department had a de facto policy of allowing its officers to rely upon flawed evidence without adequate training in the investigation of crimes and had a de facto policy which encouraged its officers to use excessive force, to conduct minimal investigation and to accept without further investigation and without question, false and illegally obtained evidence, regardless of the unreliability of such evidence, and that as a direct result of said policies or lack of training the use of force, investigation of traffic violations and crimes, as well as the evaluation and reliability of evidence used in the determination of probable cause, Mr. Fakla's right to be free from unreasonable and excessive use of force; malicious prosecution; his right to privacy; and his right to freedom of association were violated.

189.    The Borough's failure to properly discipline its police officers and to determine and monitor their continued fitness for duty coupled with its negligent retention of Defendants Chief

Geist, Officer Melchiorre and Police John and Jane Does, 1-20, despite actual and/or constructive knowledge that they were not fit to be police officers, chiefs or lieutenants, amounted to gross negligence, deliberate indifference, or reckless misconduct which directly caused and was the moving force behind the deprivations suffered by Mr. Fakla.

190.    As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, JOHN FALKA, demands the following relief against Defendants:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.    Any other relief as the Court deems just and equitable.

**SEVENTH COUNT**
(Violation of the New Jersey Civil Rights Act
- N.J.S.A. § 10:6-1 to 2)

191.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

192.    Defendants, under color of statute, ordinance, reputation, custom and usage have deprived and caused Mr. Fakla to be subjected to the deprivations of rights, privileges and immunities secured by the New Jersey Constitution and law of the State of New Jersey, including his right to liberty, his right to be secure as a person against unreasonable searches and seizures, his right to be free from unlawful detention, his right to be free from false arrest and imprisonment,

his right to be free from malicious prosecution, his right to privacy, and his right to freedom of association secured to him by the New Jersey State Constitution.

193.   At no time did Defendants have probable cause or any grounds to believe Mr. Fakla could be committed to a psychiatric facility against his will outside the civil commitment system.

194.   Defendants, acting under color of law, intentionally deprived Mr. Fakla of his civil rights by, inter alia, unlawfully seizing him, physically assaulting him, falsely arresting him, failing to intervene to prevent the unlawful acts against him, maliciously prosecuting him, and violating his right to privacy.

195.   Defendants' acts were done in knowing violation of Mr. Fakla's legal and constitutional rights and have caused Mr. Fakla damages, including economic injury, humiliation, mental pain and suffering and emotional distress.

196.   Defendants' deprivation of Mr. Fakla's civil rights violates the New Jersey Constitution and gives rise to Mr. Fakla's claims for redress under N.J.S.A. § 10:6-1 et seq.

197.   Based on the aforesaid conduct, Defendants, acting under color of law, deprived, and interfered with the exercise or enjoyment by Plaintiff of the rights guaranteed to him by the New Jersey Constitution including, but not limited to:

     a)     The right to enjoy and defend life and liberty;

     b)     The right to pursue and obtain safety and happiness;

     c)     The right to due process of law;

     d)     The right to equal protection of the laws;

     e)     The right to any other natural and unalienable right retained by the people;

     f)     The right to privacy; and

    g)      The right to be free of cruel and unjust punishment.

198.    As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

    A.      Sanctions;

    B.      Compensatory damages for pain, suffering, stress, humiliation and mental anguish

    C.      Punitive damages;

    D.      Attorneys' fees, interest and costs of suit; and

    E.      Any other relief as the Court deems just and equitable.

## EIGHTH COUNT
(Negligent and Intentional Infliction of
Emotional Distress)

199.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

200.    When they unlawfully stopped, Mr. Fakla's vehicle, physically assaulted him, falsely arrested him, lied about the true events that occurred, retaliated against him, fabricated evidence and false charges against him, initiated the malicious prosecution against him, and publicly humiliated and embarrassed him, Defendant Officers acted intentionally or recklessly with deliberate disregard of a high degree of probability that emotional distress will follow.

201.    Defendants' conduct was extreme and so outrageous in character and degree as to go beyond all possible bounds of decency. Defendants' conduct was so atrocious, it is utterly

intolerable in a civilized community.

202.    As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

    A.    Sanctions;

    B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

    C.    Punitive damages;

    D.    Attorneys' fees, interest and costs of suit; and

    E.    Any other relief as the Court deems just and equitable.

## NINTH COUNT
(Official Misconduct pursuant to N.J.S.A. § 2C:30-2)

203.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if same were fully set forth at length herein.

204.    Defendants lacked the legal authority to have Mr. Fakla committed using the criminal justice system instead of the civil commitment system.

205.    As a result of Defendants' misconduct, Mr. Fakla was arrested, detained and confined against his will through a process of malicious prosecution which had no basis in law.

206.    By and through their conduct as alleged herein, including sentencing Plaintiff to jail, detaining him, and holding him against his will, Defendants falsely arrested and falsely imprisoned Plaintiff, without the authority to do so, all in an effort to maliciously prosecute Mr. Fakla for charges that could never be upheld, as was shown in the first prosecution of Mr. Fakla

as detailed in this Complaint in Paragraphs 30-61.

207.    Plaintiff was aware of and harmed by the detention and confinement, which was all in the process of maliciously prosecuting him for charges that could never be upheld by a court in the State of New Jersey.

208.    As a result, Defendants are liable to Plaintiff for damages.

209.    The aforesaid unlawful acts of Defendants were done willfully, maliciously and with callous disregard of Plaintiff's rights.

210.    As a result of their unlawful and malicious detention, confinement, and prosecution of Plaintiff, Defendants deprived Plaintiff of both his right to his liberty without due process of law and his right to equal protection of the laws in violation of the United States and New Jersey Constitution and in violation of N.J.S.A. § 2C:30-2.

211.    As a direct and proximate result of the Defendants' violations of Mr. Fakla's constitutional rights, Mr. Fakla has suffered severe and substantial damages. These damages include litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Defendants:

A.    Sanctions;

B.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

C.    Punitive damages;

D.    Attorneys' fees, interest and costs of suit; and

E.      Any other relief as the Court deems just and equitable.

## TENTH COUNT
(Personal Liability of Chief Geist)

212.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as if fully set forth herein.

213.    Chief Geist was the main catalyst in a nine-year attempt to have Mr. Fakla illegally involuntarily committed unjustly using the criminal justice system to perpetrate this act of malicious prosecution. As is shown in the two separate attempts to have Mr. Fakla illicitly committed outside what is allowed by law, there was no probable cause to do this or basis in the law as the main assertions made by Mr. Fakla that formed the basis of his complaints against the Borough and Chief Geist, were never answered by Chief Geist and no answers were ever provided as to why Mr. Fakla was not allowed access to the video evidence of his original interrogation in 2012 or explanation ever provided by Chief Geist or the Borough as to what happened to this video evidence. Mark Melchiorre was the only officer involved in the 2019 case as Chief Geist was only brought in after the fact.

214.    Chief Geist thereafter engaged, utilizing the Middlesex Prosecutor's Office, and asserting numerous false and misleading charges and allegations, had Mr. Fakla incarcerated solely because Mr. Fakla refused to go away and not allow Chief Geist and the Borough get away with what they did to him. Such conduct was willful, fraudulent, and malicious, in blatant disregard of the United States and New Jersey Constitutions and, specifically, Mr. Fakla's Constitutional rights.

215.    Chief Geist is not entitled to immunity for his willful and malicious conduct and is, therefore, personally liable to Plaintiff for damages caused by same.

216.    As a direct and proximate result of Chief Geist's willful and malicious violations

of Mr. Fakla's Constitutional rights, Mr. Fakla has suffered severe and substantial damages. These damages include litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

WHEREFORE Plaintiff, John Fakla, demands the following relief against Chief Geist:

A.    Chief Geist's conduct in filing false, unsubstantiated charges, and using the legal systems to seek reprisals on Mr. Fakla shall be declared unconstitutional;

B.    The actions of Defendants be declared unconstitutional;

C.    Sanctions;

D.    Compensatory damages for pain, suffering, stress, humiliation and mental anguish

E.    Punitive damages;

F.    Attorneys' fees, interest and costs of suit; and

G.    Any other relief as the Court deems just and equitable.

Respectfully submitted,
LAW OFFICE OF
JORDAN P. BREWSTER
*Attorney for Plaintiff*

By: _____
JORDAN P. BREWSTER

Dated: June 17, 2022

## JURY DEMAND PURSUANT TO L.CIV. R. 38.1

Plaintiff demands a trial jury as to all issues so triable.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other

action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,
LAW OFFICE OF
JORDAN P. BREWSTER
*Attorney for Plaintiff*

By: _____
JORDAN P. BREWSTER

Dated: June 17, 2022

EXHIBIT A

# JPB

## Law Office of Jordan P. Brewster

Complex Civil Litigation - Trusts & Estates - Real Estate

Telephone
973-500-6254

Fax
973-795-7125

14 Pine Street, Suite 7
Morristown, N.J. 07960

Website
www.jpbrewsterlaw.com

E-mail
jpbrewsterlaw@gmail.com

### \*\*\* TORT CLAIM NOTICE \*\*\*

## SENT VIA FEDERAL EXPRESS & REGULAR MAIL

1.  Thomas F. Kelso, County Counsel
    Middlesex County
    County Administration Building, 2nd Fl.
    75 Bayard Street
    New Brunswick, NJ 08901
    **RE: Tort Claim Notice**

2.  Yolanda Ciccone, Prosecutor
    Middlesex County Prosecutor's Office
    25 Kirkpatrick Street, 3rd Floor
    New Brunswick., NJ 08901
    **RE: Tort Claim Notice**

3.  Attorney General's Office
    State of New Jersey
    **Tort Claim Notice Section**
    Richard Hughes, Justice Complex
    25 Market Street
    POB080
    Trenton, NJ 08625

4.  Matthew P. Geist, Chief of Police
    Middlesex Borough Police Department
    1101 Mountain Avenue
    Middlesex, NJ 08846
    **RE: Tort Claim Notice**

5.  Marcia A. Karrow, Middlesex Borough Administrator
    1200 Mountain Ave
    Middlesex, NJ 08846
    **RE: Tort Claim Notice**

6.  Rutgers Health: University Behavioral Health Care
    671 Hoes Lane West
    Piscataway, NJ 08854
    **RE: Tort Claim Notice**

7.     Rutgers Biomedical and Health Sciences
       Office of the Chancellor
       Rutgers, The State University of New Jersey
       Stanley S. Bergen Building
       65 Bergen Street
       Newark, NJ 07103
       **RE: Tort Claim Notice**

8.     NJ Dept. of Treasury
       Bureau of Risk Management
       P.O. Box 620
       Trenton, NJ 08625
       **Attn.: Tort Claims Unit**

9.     Ann Klein Forensic Center
       1609 Stuyvesant Avenue
       P.O. Box 7717
       West Trenton, NJ 08628
       **RE: Tort Claim Notice**

10.    Middlesex County Jail
       Apple Orchard Lane
       North Brunswick 08902
       P.O. Box 266, New Brunswick, NJ 08903
       **RE: Tort Claim Notice**

### RE:  John Fakla *** TORT CLAIM NOTICE ***

**Date of Incident:      On or about March 30, 2021**

Dear Sir/Madam:

  Enclosed please find the Tort Claims Notice on behalf of **John A. Fakla** for injuries sustained related to the investigation, arrest and criminal charging related to IND#: 19-10-01630, PROS#: 19003232 that accrued on March 30, 2021, when the aforementioned matter was dismissed with prejudice and the Claimant was released from his various incarcerations and deprivations of liberties and rights which resulted in a series of malicious, arbitrary, and false acts at the hands of various municipal and state officials which lead to the prolonged incarceration and victimization of the claimant in violation of his civil rights. This Tort Claim Notice is being provided in a statutorily timely manner Pursuant to N.J.S.A. 59:8-4, please be advised as follows:

(A)    Name and address of Claimant:

      John A. Fakla
      521 Norwich Court
      Piscataway, NJ 08854

(B)    Name & Address of Attorney:

      Jordan P. Brewster, Esq.
      Law Office of Jordan P. Brewster
      14 Pine Street, Suite 7
      Morristown, NJ 07960

(C)    Date of Incidents and Locations: On or about July 1, 2019, through and until March 30, 2021; in the Borough of Middlesex, New Jersey; also, in the Middlesex Borough Police Department; Rutgers University Behavioral Health Care, Piscataway, New Jersey; Ann Klein Forensic Center in West Trenton, New Jersey; at the Middlesex County Prosecutor's Office; in County of Middlesex and at the Middlesex County Courthouse and County Jail, New Brunswick, New Jersey.

(D)    Description of Injuries: As a result of both the Middlesex Borough Police Department and Middlesex County Prosecutor's Office's investigation, charging and arrest of the Claimant, starting on or about July 1, 2021 Claimant a series has suffered significant and irreversible damages and injuries due to violations of both his State and Federal Civil and Constitutional Rights, which included wrongful incarceration, false imprisonment, malicious prosecution, and official misconduct on behalf by all the aforementioned entities.

(E)    Responsible Parties:

-    Borough of Middlesex and its employees, contractors and/or agents.

-    Borough of Middlesex, New Jersey, the Borough of Middlesex Police Department and its employees, contractors, and/or agents; as well as these individuals that are specifically implicated below:

      1)    Officer Painchaud

      2)    Officer Paul Cerreto

      3)    Sgt. Carroll

      4)    Officer Mark Melchiorre

      5)    Officer Mark Arancio

      6)    Chief Matt Geist

- Middlesex County Prosecutors Office, and its employees, contractors and/or agents; as well as these individuals that are specifically implicated below:

    1)    Investigator Chris Van Eerde

    2)    Investigator Deon Mccall

    3)    Prosecutor Chris Kubereit

    4)    Prosecutor Martha Mckinney

    5)    Prosecutor Christopher Fusick

    6)    Prosecutor Brian Gillet

    7)    Prosecutor Deanna Himelson

- Middlesex County Pre-Trial Division and its employees, contractors and/or agents; as well as these individuals that are specifically implicated below:

    1)    Mario Fernandez

    2)    Ms. Jannone, supervisor over Mario Fernandez

- Ann Klein Forensic Center and its employees, contractors and/or agents; as well as these individuals that are specifically implicated below:

    1)    Dr. Peter Paul, MD

    2)    Dr. Steven Simring, MD

- Rutgers Health: University Behavioral Health Care and its employees, contractors and/or agents; as well as these individuals that are specifically implicated below:

    1)    Dr. Ashraf

    2)    Dr. Gunja

    3)    Supervisor Avis Scott

- New Jersey Attorney General's office and its employees, contractors and/or agents; as well as these individuals that are specifically implicated below:

    1)    AG Max Henry

    2)      AG Supervisor Mr. Augustyn

    3)      AG Veronica Allende

-  Middlesex County Jail, and its employees, contractors and/or agents.

(F)    Amount of Damages Claimed: $2,000,000; however, the full extent of the claimant's injuries cannot be determined at the present time.

Please contact this office with any questions.

Thank you.

Very truly yours,

JORDAN P. BREWSTER

JPB

| Shipment Delivery Date (mm/dd/yyyy) | Shipment Tracking Number | Proof of Delivery Recipient | Recipient Name | Recipient Company Name | Recipient Address | Recipient City |
|---|---|---|---|---|---|---|
| 06/24/2021 | 774082441620 | M.GEIST | Matthew Geist, Chief of Police Thomas F. Kelso, County Counse | | 1101 Mountain Avenue | MIDDLESEX |
| 06/24/2021 | 774082292762 | M.ROOM | | | 75 Bayard Street | NEW BRUNSWICK |
| 06/24/2021 | 774082357053 | 9999999999999 | Yolanda Ciccone, Prosecutor | Middlesex County Prosecutor | 25 Kirkpatrick Street, 3rd Flo | NEW BRUNSWICK |
| 06/24/2021 | 774082690977 | T.FREDERICK | | Ann Klein Forensic Center | 1609 Stuyvesant Avenue | TRENTON |
| 06/24/2021 | 774082577668 | K.ALPHONSE | Office of the Chancellor | Rutgers Biomedical and Health | Stanley S. Bergen Building | NEWARK |
| 06/24/2021 | 774082473718 | MB | Administrator | Middlesex Borough | 1200 Mountain Ave | MIDDLESEX |
| 06/24/2021 | 774082659054 | M.TENTH FLOOR MAIL DROP | Bureau of Risk Management | NJ Dept. of Treasury | 20 West State Street | TRENTON |
| 06/24/2021 | 774082514218 | | University Behavioral Health C | Rutgers Health | 671 Hoes Lane West | PISCATAWAY |
| 06/24/2021 | 774082399542 | R.RESO | Tort Claim Section | NJ Attorney General's Office | 25 Market Street | TRENTON |
| 06/24/2021 | 774082740747 | GUARD | Tort Claim Division | Middlesex County Jail | Apple Orchard Lane | NORTH BRUNSWICK |