<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN FAKLA,<br><br>                          Plaintiff,<br><br>v.<br><br>MATTHEW GEIST, *et al.*,<br><br>                          Defendants. | Civil Action No: 22-4126 (SDW) (SDA)<br><br>**OPINION**<br><br>August 2, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendants Matthew Geist ("Defendant Geist") and Mark Melchiorre's ("Defendant Melchiorre, together with Defendant Geist, "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 105 ("MSJ")) and Plaintiff John Fakla's ("Plaintiff") cross-motion to reopen discovery pursuant to Rule 16(b)(4).  (D.E. 109.)[1]  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Plaintiff's motion to reopen discovery is **DENIED**, and Defendants' MSJ is **GRANTED**.

## I.      <u>FACTUAL BACKGROUND</u>[2]

---

[1] On February 6, 2024, Defendants filed a motion to dismiss (D.E. 93) Plaintiff's First Amended Complaint (D.E. 90) pursuant to Rule 12(b)(6).  In accordance with Rule 12(d), this Court converted it into a motion for summary judgment. (D.E. 97.)

[2] Facts cited in this opinion are drawn from Defendants' Statement of Material Facts (D.E. 105-2 ("Defendants' Statement")), Plaintiff's supplemental statement of undisputed material facts (D.E. 110-3 ("Plaintiff's Statement")), and Defendants' responses to Plaintiff's Statement (D.E. 113-1.)  The facts presented in Defendants' Statement are largely undisputed for purposes of summary judgment because Plaintiff has failed to properly contest most of the factual allegations set forth therein, as required by Local Civil Rule ("Local Rule") 56.1(a), which provides:

## A.  The Events of October 28, 2012

This case arises from an allegedly illegal traffic stop that occurred on October 28, 2012, and Plaintiff's several interactions with the Middlesex Borough Police Department ("Middlesex PD") since then.  Plaintiff alleges that, on October 28, 2012, he was pulled over in his car by Defendant Melchiorre, a police officer in the Middlesex PD.  (D.E. 110-3 ¶ 1.)  Defendant Melchiorre and another Middlesex PD officer proceeded to arrest Plaintiff for driving while intoxicated.  (*Id.*)  After they brought Plaintiff to the Middlesex Borough police station, Plaintiff asserts, a series of disturbing actions were taken against him by Defendant Melchiorre and Defendant Geist, the Chief of the Middlesex PD.  (*Id.* ¶ 2.)  Specifically, Plaintiff insists that Defendants brutally assaulted him, rubbed a substance on his genitals and face, tortured and molested him, injected him with an unknown substance, accused him of trafficking drugs, and stated that they "wanted to tarnish" his reputation.  (*Id.* ¶¶ 2–3.)  Plaintiff asserts that he was held in custody for days and was released only after Defendant Melchiorre had searched his home and found no contraband to support the drug-trafficking accusations.  (*Id.* ¶¶ 4–7.)  Months later,

---

The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement [of material facts], indicating agreement or disagreement and, if not agreed, *stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.  In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition. . . . Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

L. CIV. R. 56.1(a) (emphasis added).  Here, notwithstanding this Court's express instruction to Plaintiff to comply with Local Rule 56.1, he has failed to do so.  Specifically, Plaintiff has failed to cite to record evidence in response to Defendants' Statement.  Accordingly, this Court deems as undisputed the facts set forth in Defendants' Statement unless otherwise noted. *Kemly v. Werner Co.*, 151 F. Supp. 3d 496, 499 n.2 (D.N.J. 2015); *N.J. Carpenters Pension Fund v. Housing Auth. & Urban Dev. Agency*, 68 F. Supp. 3d 545, 549 (D.N.J. 2014).  Even if this Court were to accept Plaintiff's conclusory and unsupported disputes, it raises few, if any, *material* disputes of fact, and thus the outcome of the present motion would not change.

Plaintiff was charged for the DUI.  (*Id.* ¶ 5.)  He pled guilty to the charges because his attorney advised him that the municipal court judge would not believe his recollection of the events that purportedly occurred on October 28, 2012.  (*Id.* ¶¶ 8–9.)

**B.  Plaintiff's Efforts to Expose the Events of October 28, 2012**

Plaintiff has spent years attempting to uncover the details of, and hold accountable Defendants for, the events that purportedly occurred on October 28, 2012.  Plaintiff claims to have hired private investigators and attorneys, filed complaints with the Middlesex Borough PD's office of internal affairs, and authored various social media posts about Defendants and the Middlesex Borough PD.  (*Id.* ¶¶ 8, 10–15.)  When those efforts did not bear fruit, Plaintiff admits, he "bec[a]me more insistent with the release of these things, that he would be charged with terroristic threats and stalking." (*Id.* ¶ 15.)  Indeed, undisputed evidence in the record establishes that Plaintiff has threatened Defendant Melchiorre and his family on multiple occasions, including by leaving threatening voicemails, sending angry emails, and appearing outside of Defendant Melchiorre's home.  (D.E. 105-2 ¶ 14.)

Plaintiff's endeavors continued into 2019.  In the first half of the year, Plaintiff had several encounters with the Middlesex Borough PD, all seemingly related to his efforts to investigate— or, allegedly, harass—Defendant Melchiorre.  For instance, on April 3, 2019, Defendant Melchiorre's children saw Plaintiff drive by their home and, thereafter, park his car on a nearby corner.  (*Id.* ¶ 4.)  After the children explained what they had seen, Defendant Melchiorre identified Plaintiff and called the police.  (*Id.*)  Plaintiff was neither arrested nor prosecuted for his actions outside of Defendant Melchiorre's home on April 3, 2019.  (*Id.* ¶ 7.)

Plaintiff had several other encounters with Middlesex Borough PD officers on June 21, 23, 30, and July 1.  (D.E. 105-4 at 55–63.)  Plaintiff acknowledges that his claims largely arise out of

his interactions with the Middlesex Borough PD on July 1, 2019.  (D.E. 111 at 10 ("Defendants are correct in identifying that the Plaintiff only seeks liability for the second malicious prosecution claim . . . .").)

**C.  The Alleged Malicious Prosecution**

On July 1, 2019, Defendant Melchiorre was directing traffic when he, on several occasions, observed Plaintiff drive by and shout at him.  (D.E. 105-2 ¶ 8.)  Eventually, Plaintiff parked his vehicle on a nearby side street and stayed there.  (*Id.*)  Defendant Melchiorre, fearing for his safety and focused on conducting traffic, called the Middlesex PD headquarters for back up.  (*Id.* ¶¶ 8–10.)  Officer Painchaud responded to the call, and immediately thereafter, a pursuit ensued.  (*Id.* ¶ 9; D.E. 105-4 at 63.)  Officer Painchaud attempted to pull over Plaintiff, but Plaintiff refused to do so.  Instead, Plaintiff admits, he called 9-1-1 and informed the 9-1-1 operator that he would not stop.  (D.E. 105-4 at 63.)  The 9-1-1 operator, in turn, directed Officer Painchaud to "terminate the pursuit," and advised Plaintiff that he should return to his home but that it would not "absolve him of his obligation to stop for a lawful police motor vehicle stop."  (*Id.*)

On July 2, 2019, Officer Painchaud filed in New Jersey municipal court a criminal complaint against Plaintiff along with an affidavit of probable cause to arrest him.  (*Id.* at 55–62.)  Municipal Court Judge Spero A. Kalambakas found that probable cause to arrest Plaintiff existed, and Plaintiff was arrested shortly thereafter.  (*Id.*; D.E. 110-3 ¶ 25.)

In the months that followed, the Middlesex County Prosecutor's Office pursued charges against Plaintiff, and on October 23, 2019, a grand jury indicted him.  (D.E. 110-3 ¶¶ 26–27.)  The undisputed facts establish that Defendant Geist communicated with the Middlesex County Prosecutor's Office about the case, but that his role was "ordinary."  (D.E. 105-2 ¶ 12.)

The prosecution against Plaintiff proceeded until early 2021.  On January 26, 2021, Judge Joseph Paone of the Superior Court of New Jersey Law Division, Middlesex County-Criminal Part, found that Plaintiff "lack[ed] the fitness to proceed to trial as a result of mental illness," and that "[t]here [wa]s not evidence that it [would be] substantially probable that [Plaintiff] could regain his competence within the foreseeable future."  (D.E. 105-4 at 44–45.)  Approximately two months later, Judge Paone entered an order that, among other things, dismissed with prejudice the charges against Plaintiff.  (*Id.* at 41–42.)

## II.   **PROCEDURAL HISTORY**

### A.  **The First Complaint**

On June 17, 2022, Plaintiff filed a 10-cout complaint against a slew of defendants.[3]  (D.E. 1 ("Complaint").)  In the months that ensued, the several then-named Defendants responded to the Complaint by either filing an answer or a motion to dismiss.  (D.E. 9, 12, 14, 16.)  On October 5, 2022, the parties appeared for an initial scheduling conference before then-Magistrate Judge Edward S. Kiel.  (D.E. 24, 27.)  Six days later, a pretrial scheduling order was entered, and discovery commenced.  (D.E. 27.)  Since then, multiple extensions to the discovery schedule have been granted (D.E. 52, 65, 68), and several of the originally named defendants have been dismissed from this suit.[4]

### B.  **Reassignment and January 9, 2024 Hearing**

---

[3] The original Complaint was filed against the Borough of Middlesex, the Middlesex Borough Police Department, Mark Melchiorre, Matthew Geist, Middlesex County, Middlesex County Prosecutor's Office, Martha McKinney, Brian Gillet, Christopher Van Eerde, Ann Klein Forensic Center, and several unnamed people and entities.  (*See generally* D.E. 1.)

[4] Specifically, on October 18, 2022, Plaintiff stipulated to the dismissal of the Ann Klein Forensic Center as a defendant, (D.E. 31); on November 9, 2022, Plaintiff stipulated to the dismissal of the Middlesex County Prosecutor's Office, Martha McKinney, Brian Gillet, and Christopher Van Eerde as defendants, (D.E. 35); on September 19, 2023, Plaintiff stipulated to the dismissal of the County of Middlesex as a defendant, (D.E. 72).

On April 13, 2023, Defendants Melchiorre and Geist along with then-named Defendants Borough of Middlesex and Middlesex PD filed a motion for judgment on the pleadings.[5] (D.E. 53.) On November 29, 2023, this matter was reassigned to this Court. (D.E. 81.) The next day, this Court referred to then-Magistrate Judge Kiel Plaintiff's pending motion for sanctions and entry of default. Two weeks later, this Court scheduled for January 9, 2024, an oral argument on the motion for judgment on the pleadings. (D.E. 82.)

At the outset of the January 9 Hearing, Plaintiff, represented by able counsel, indicated to this Court that the malicious prosecution claim arising out of the July 2019 arrest was the only claim that would not be barred by the statute of limitations. (D.E. 91 at 4–5; *see also id.* at 9 ("[Defendants' counsel] is correct that from a statute of limitations standpoint the really only thing that would stand . . . .").) Plaintiff's counsel, moreover, acknowledged that discovery was closed and that he had evidence to prove the claims arising from the July 2019 arrest. (*Id.* at 10.)

Thereafter, this Court attempted to discuss the efficacy of the remaining counts and to determine whether Plaintiff wished to pursue them further. (*Id.* at 18.) During that hearing, Plaintiff consented to the dismissal of several claims (*see, e.g., id.* at 19 ("We can stipulate that [Count 1] should probably be dismissed.")); *see also id.* at 20, 31); conceded that, by failing to adequately respond arguments in then-named Defendants' briefing, he waived certain claims (*see, e.g., id.* at 30); and represented to this Court that he would file an amended complaint with well-pleaded factual allegations sufficient to state a claim upon which relief can be granted.[6] (*Id.* at

---

[5] Notably, on June 27, 2023, the then-presiding district judge issued an opinion and order granting a motion for judgment on the pleadings filed by the then-named Defendant Middlesex County. (D.E. 62, 63.) The June 27, 2023 opinion and order did not address the April 13, 2023 motion for judgment on the pleadings. (*See generally* D.E. 62, 63.)

[6] Specifically, Plaintiff's counsel conceded that the following counts should be dismissed: municipal and governmental liability pursuant to N.J. Stat. Ann. §§ 2C:30-2 and 2C:30-7 (Count 1); unreasonable and excessive force under 42 U.S.C. § 1983 (Count 2); negligent hiring (Count 6); official misconduct pursuant to N.J. Stat. Ann. § 2C:30-2 (Count 9); and personal liability against Defendant Geist (Count 10). (*Id.* at 19, 20, 31, 46, 48.) Likewise,

49.)   For those reasons, among others,[7] this Court dismissed with and without prejudice the remaining claims in Plaintiff's Complaint.  (*Id.* at 50–52.)  This Court then listed on the record its rationale for the decision and, thereafter, issued an order setting forth the same.[8]  (D.E. 91 at 50–54; D.E. 87; D.E. 97.)  Notwithstanding Plaintiff's waiver of several claims, this Court permitted him an opportunity to amend his complaint to assert claims that were not deficient as a matter of law or barred by the two-year statute of limitations.[9]  (D.E. 91 at 54.)

### C.  The Amended Complaint

On January 24, 2024, Plaintiff filed in this Court an amended complaint, which alleges the following three claims against Defendants Melchiorre and Geist:  malicious prosecution under 42 U.S.C. § 1983; violation of New Jersey's Civil Rights Act ("NJCRA"), N.J. Stat. Ann. 10:6-1–2; and negligent and intentional infliction of emotional distress.  (D.E. 90 ("Amended Complaint").)  On February 6, 2024, Defendants filed a motion to dismiss the Amended Complaint.  (D.E. 93 ("Second MTD").)  On February 28, 2024, after having reviewed the Second MTD and the history

---

Plaintiff's counsel admitted that, by failing to respond in his brief in opposition to then-Defendants' motion for judgment on the pleadings, the claims for conspiracy under 42 U.S.C. § 1985 (Count 4) and supervisor liability under 42 U.S.C. § 1983 (Count 5) had been waived.  (*Id.* at 30.)

[7] This Court also noted on the record that other grounds existed for dismissing several of Plaintiff's claims, including that multiple claims were not properly pled causes of action, and that many claims were subject to New Jersey's two-year statute of limitations and thus would be time barred to the extent they accrued prior to June 17, 2020.  (*See, e.g.*, *id.* at 16, 18, 20, 46.)

[8] The Order filed on January 10, 2024, erroneously stated "All counts against Defendants Geist and Melchiorre relating to conduct that allegedly occurred prior to June 17, 2020" were dismissed with prejudice.  (D.E. 87.)  Accordingly, after Plaintiff filed a motion for reconsideration, this Court amended the January 10, 2024 Order to state "All counts against Defendants Geist and Melchiorre are DISMISSED WITH PREJUDICE to the extent *they accrued prior to June 17, 2020*."  (D.E. 90 (emphasis added).)

[9] Plaintiff has repeatedly insisted in his submissions that this Court arbitrarily chose June 17, 2020, as the date by which his claims must have accrued.  Plaintiff filed his complaint on June 17, 2022 (D.E. 1), and a majority of his claims were subject to a two-year statute of limitations.  *See Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 65 n.1 (3d Cir. 2021); *McCargo v. Camden Cnty. Jail*, 693 F. App'x 164, 165–66 & n.1 (3d Cir. 2017) (noting that claims brought pursuant to 42 U.S.C. § 1983 are subject to New Jersey's two-year statute of limitations); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("The New Jersey two-year statute of limitations applies to section 1985 claims and runs from the date of each overt act causing damage to a plaintiff.").  As such, any claims that accrued prior to June 17, 2020, are time barred.

of this litigation, this Court converted the motion into one for summary judgment. (D.E. 97.) On April 15, 2024, following a brief extension, the parties filed their respective motions: Defendants filed the MSJ, and Plaintiff filed a cross-motion to reopen discovery. (D.E. 105, 109.) The parties timely completed briefing.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)) The nonmoving party "must present more than just 'bare assertions, conclusory allegations or

suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.  In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 656–57 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

## IV.   DISCUSSION

Plaintiff's opposition to Defendants' MSJ relies in part on his argument that he needs additional discovery.  This Court must address that preliminary argument before turning to the merits of Defendants' MSJ.

### A.  Motion to Reopen Discovery

Plaintiff's motion to reopen discovery is untimely, and in any event, it seeks discoverable information that is immaterial to the resolution of Defendants' motion for summary judgment.

Rule 16(b)(4) permits modifications to scheduling orders "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The good cause standard is not a low threshold, and the district court has broad discretion to control and manage discovery.  *Morel v. Goya Foods, Inc.*, No. 20-5551, 2022 WL 3369664, at *2 (D.N.J. Aug. 16, 2022).  In evaluating whether to grant a motion to reopen discovery, courts consider several factors, including:  "(1) the good faith and diligence of the moving party, (2) the importance of the evidence, (3) the logistical burdens and benefits of re-opening discovery, [and] (4) prejudice to the nonmoving party." *Goldrich v.*

*City of Jersey City*, No. 15-885, 2018 WL 3360764, at *1 (D.N.J. July 10, 2018) (citing *Cevdet Aksut Ogullari Koll, STI v. Cavusoglu*, No. 14-3362, 2017 WL 3013257, at *4 (D.N.J. July 14, 2017)).

The foregoing factors weigh heavily against reopening discovery.  First, Plaintiff has failed to demonstrate his diligence as the party moving to reopen discovery.  On December 19, 2023—after having granted multiple extensions to the discovery schedule—then-Magistrate Judge Edward S. Kiel deemed discovery complete.  (D.E. 85.)  Rule 72(a) provides litigants, such as Plaintiff, 14 days to file objections to orders on nondispositive matters.  Fed. R. Civ. P. 72(a).  And Plaintiff has provided no persuasive reason for his failure to do so.  Accordingly, he now "may not assign as error a defect in the order not timely objected to," nor can he claim that he acted with diligence.  *Id.*  Second, for reasons that will become apparent, the evidence that Plaintiff seeks is immaterial to the resolution of Defendants' motion for summary judgment.[10]  Having found that the first two factors weigh heavily against reopening discovery, this Court denies Plaintiff's motion and turns to Defendants' MSJ.

## B.  Defendants' MSJ

---

[10] To the extent this application was made pursuant to Rule 56(d), it fails for similar reasons.  Rule 56(d) permits a litigant who "cannot present facts essential to justify its opposition" to a motion for summary judgment to ask the district court to permit additional discovery.  The Third Circuit "ha[s] interpreted this provision to require 'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (alteration in original) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139–40 (3d Cir. 1988)).  Here, although Plaintiff identifies what information he seeks—personnel records and files related to internal affairs investigations—he utterly fails to meet his burden of explaining why he had not sooner obtained the discovery or how, if received, it would preclude summary judgment.  As mentioned, discovery was closed by then-Magistrate Judge Kiel on December 19, 2023, and Plaintiff failed to timely appeal that order.  He cannot now use Rule 56(d) as a veiled attempt to raise an untimely appeal of that decision.  In any event, Plaintiff provides no explanation of how the provision of personnel records and internal affairs investigations into Defendant Geist would preclude summary judgment.  Consequently, this Court may consider Defendants' MSJ.  *See Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) ("If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law."  (citing *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986))).

1.   Malicious Prosecution (Counts 1 and 2)

Because Plaintiff has failed to set forth any prima facie evidence that Defendants acted without probable cause and with malice, the MSJ will be granted as to Counts 1 and 2.

To prevail on a claim for malicious prosecution, a plaintiff must establish:  (1) a criminal proceeding was initiated against him, (2) without probable cause, (3) the criminal proceeding ended in the plaintiff's favor[11], (4) the defendant's acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty.  *Lozano v. New Jersey*, 9 F.4th 239, 247 (3d Cir. 2021) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020)).   Police officers who conceal or misrepresent material facts to the prosecutor or otherwise interfered with the decision to prosecute may be held liable for malicious prosecution. *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014).

a.   *Probable Cause*

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  This fact-intensive inquiry "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"—it "is not a high bar."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citations omitted); *see also Givens v. Wal-Mart Stores, Inc.*, No. 22-2989, 2023 WL 7144628, at *2 (3d Cir. Oct. 31, 2023) (describing probable

---

[11] The Supreme Court has recently held that the favorable termination element of a malicious prosecution claim "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction."  *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

cause as a "relatively low bar"). The burden to establish a lack of probable cause rests with the plaintiff. *Land v. Helmer*, 843 F. Supp. 2d 547, 550 (D.N.J. 2012).

Where, as here, a plaintiff is arrested pursuant to a warrant executed by a neutral magistrate, "a plaintiff must establish first, that the officer, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause." *Geness v. Cox*, 902 F.3d 344, 356–57 (3d Cir. 2018) (cleaned up) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016)). "Omissions are made with reckless disregard only if an officer withholds a fact 'in his ken' that any reasonable person would have known . . . [is] the kind of thing the judge would wish to know." *Id.* (quoting *Dempsey*, 834 F.3d at 470). "[T]he focus is [on the] 'facts and circumstances within the officer's knowledge' at the time of the arrest, irrespective of later developments." *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

Here, Plaintiff has presented no evidence to suggest that Defendants, with a reckless disregard for the truth, made any false statements to, or withheld information from, Officer Painchaud—the officer who filed the criminal complaint against Plaintiff. Conversely, the undisputed evidence before this Court indicates that there was probable cause to arrest Plaintiff for violating New Jersey's anti-stalking statute. That statute provides "A person is guilty of stalking . . . if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress." N.J. Stat. Ann. 2C:12-10(b). Specifically, the undisputed evidence suggests that: on July 1, 2019, Plaintiff drove by Defendant Melchiorre on multiple occasions, yelling at him and parking his car nearby; Defendant Melchiorre, fearing that he may be targeted by Plaintiff, called for backup; in turn, Officer Painchaud responded to the call and personally

observed Plainitff's behaviors; and Plaintiff fled when Officer Painchaud attempted to pull him over.   Following this series of events—in conjunction with Plaintiff's recent history with Middlesex PD officers—Officer Painchaud filed a criminal complaint against Plaintiff.

Plaintiff attempts to rebut the foregoing facts with conclusory allegations and references to unrelated investigations.  Neither is sufficient.  For instance, Plaintiff surmises that Defendants Geist and Melchiorre were heavily and improperly involved in Officer Painchaud's efforts to obtain the warrant and the subsequent prosecution.  In addition, Plaintiff insists that the affidavit of probable cause should have contained facts about the Middlesex Borough PD's years of interactions with and investigations into Plaintiff.  The former argument is unsupported by any evidence, however; and it is axiomatic that a nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik*, 409 F.3d at 594 (quoting *Celotex Corp.*, 477 U.S. at 325).  Plaintiff's latter argument is wholly unpersuasive—the information is immaterial to a probable cause determination, and Plaintiff has not shown that Officer Painchaud even knew of Plaintiff's years-old encounters with Defendants.[12]

Consequently, Defendants' MSJ will be granted as to Counts 1 and 2.[13]

---

[12] The undisputed facts also establish that Plaintiff was indicted by a grand jury.  That "constitutes prima facie evidence of probable cause to prosecute," *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)), which Plaintiff could overcome at the summary judgment stage by "point[ing] to evidence that the grand jury indictment 'was procured by fraud, perjury or other corrupt means.'" *Outen v. Off. of Bergen Cnty. Prosecutor*, No. 12-123, 2013 WL 6054586, at *4 (D.N.J. Nov. 14, 2013) (quoting *Camiolo*, 334 F.3d at 363).  Plaintiff has not done so.

[13] Plaintiff's argument that "clear and unambiguous evidence" of probable cause is needed to grant summary judgment is unfounded.  The undisputed facts suggest that there was probable cause to arrest Plaintiff, and Plaintiff has failed to put forth any evidence to the contrary.  To the extent there are any inconsistencies in the affidavit of probable cause, it is of little import because "the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (citing *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005)).  As such, a court evaluating probable cause at the summary judgment stage will only find a genuine issue of material facts when it "view[s] all . . . facts" and finds that a "reasonable jury could

b. *Malice*

This Court, in the alternative, grants Defendants' MSJ because Plaintiff has failed to present any evidence of malice. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988). "[C]ourts have required that 'a showing of actual malice . . . include at least some extrinsic evidence of malice, rather than relying only upon inference." *Severubi v. Boro. Sayreville*, No. 10-5707, 2011 WL 1599630, at *5 (D.N.J. Apr. 27, 2011) (quoting *Pittman v. Metuchen Police Dep't*, No. 08-2373, 2010 WL 4025692, at *8 (D.N.J. Oct. 13, 2010)).

Here, the undisputed evidence suggests that Officer Painchaud acted independently of either Defendant in initiating the arrest warrant, and Plaintiff has failed to provide any evidence indicating that Defendants Melchiorre or Geist acted with any improper purpose, let alone that they were involved in initiating the prosecution. Plaintiff cannot make such a showing by pointing to the mere fact that Defendants Melchiorre and Geist had previously investigated him and that they admitted that they were concerned about his history of stalking and harassing them.

Plaintiff has failed to present any evidence of Defendants' malicious intent, and therefore, summary judgment will be granted in Defendants' favor.[14]

2.  Negligent and Intentional Infliction of Emotional Distress (Count 3)

---

conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." *Id.* No such genuine issue of material fact exists here.

[14] "The NJCRA was modeled after 42 U.S.C. § 1983," and accordingly, courts in this District routinely "construe the NJCRA in terms nearly identical to . . . Section 1983." *Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015) (quoting *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)). Plaintiff does not explain how, if at all, Count 2 is distinguishable from Count 1. To the contrary, he has represented that the NJCRA claim overlaps with, or relies primarily on, the malicious prosecution claim. Consequently, Count 2 fails for the same reasons as Count 1.

Plaintiff's NIED and IIED claims fare no better.  To prevail on a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must demonstrate that (1) the defendant owed him or her a duty of reasonable care, (2) the defendant breached that duty, (3) that breach caused him or her to suffer severe emotional distress, and (4) the breach was the proximate cause of his or her injuries.  *Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. Super. Ct. App. Div. 2023) (citing *Dello Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003)).  Meanwhile, an intentional infliction of emotional distress ("IIED") claim requires a plaintiff to establish that the defendant's actions were intentional or reckless, "extreme and outrageous," and "the proximate cause of plaintiff's emotional distress," and that "the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it."  *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) (internal citations omitted).  Although the elements of the claims differ, they both are subject to a two-year statute of limitations.  N.J. Stat. Ann. 59:1-1 to 12-3; N.J. Stat. Ann. 59:8-8; *see Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 65 at n.1 (3d Cir. 2021) (explaining that claims for NIED and IIED, among others, have a two-year statute of limitations).  A claim accrues, and thus the two-year limitations period begins to run, "on the date on which the underlying tortious act occurred."  *Ben Elazar v. Macrietta Cleaners*, 165 A.3d 758, 764 (N.J. 2017).  For both NIED and IIED claims, the date of accrual is the date of the incident on which the claim is based took place.  *See, e.g.*, *Mills v. Golden Nugget Atlantic City, LLC*, No. 19-19610, 2020 WL 3452101, at *6 (D.N.J. June 24, 2020); *Lloyd v. Ocean Twp. Council*, No. 19-600, 2019 WL 4143325, at *4 (D.N.J. Aug. 31, 2019).

Here, Plaintiff provides no evidence of misconduct by Defendants that occurred after June 17, 2020, which could serve as the basis of an NIED or IIED claim.  Therefore, Count 3 is barred by the two-year statute of limitations.

Plaintiff insists that *Coello v. DiLeo*, 43 F.4th 346 (3d Cir. 2022) stands for the proposition that the accrual date of a malicious prosecution claim—which occurs when the criminal proceedings are favorably resolved—defers the accrual date of his other claims. Not so. The *Coello* Court held that this deferred-accrual rule applied only to "state [law] claims [that] resemble the malicious prosecution tort and thus could not have accrued until the state court vacated [the plaintiff's] conviction." *Id.* at 356 (citing *Bessasparis v. Twp. of Bridgewater*, No. A-1040-19, 2021 WL 1811637, at \*7 (N.J. Super. Ct. App. Div. May 6, 2021) (per curiam)). Plaintiff's NIED and IIED claims hardly resemble a claim for malicious prosecution; indeed, they sweep much more broadly. To be sure, the claims relate to Defendants' "assault[ing Plaintiff], falsely arrest[ing] him, [lying] about the true events that occurred, retaliat[ing] against him, fabricat[ing] evidence and [initiating] false charges against him, intiat[ing] the malicious prosecution against him, . . . publicly humiliat[ing] and embarrass[ing] him," and for "act[ing] intentionally or recklessly with deliberate disregard of a high degree of probability that emotional distress will follow." (D.E. 90 ¶ 163.). Extending the *Coello* deferred-accrual rule to such a claim would render meaningless New Jersey's two-year statute of limitations on tort claims.

In sum, Plaintiff has not provided any evidence of either an NIED or IIED claim that accrued June 17, 2020 or later. Consequently, the claims are barred by New Jersey's two-year statute of limitations.[15]

---

[15] At the outset of this Opinion, this Court denied Plaintiff's motion to reopen discovery because, among other reasons, Plaintiff did not seek to discover evidence that would be material to the resolution of Defendants' MSJ. As should now be apparent, the personnel, disciplinary, and/or internal affairs records that Plaintiff seeks were immaterial to the foregoing analyses.

## V.    <u>CONCLUSION</u>

For the reasons set forth above Defendants' MSJ is **GRANTED**, and Plaintiff's cross-motion to reopen discovery is **DENIED**.[16]  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Stacey D. Adams, U.S.M.J.
        Parties

---

[16] Plaintiff has failed to identify the names of the fictitiously named defendants.  Therefore, this Court dismisses the fictitiously named defendants—John and Jane Does 1–10, ABC Corporations 1–10, and ABC Public Entities 1–10—pursuant to Rule 21.  *McCrudden v. United States*, 763 F. App'x 142, 145 (3d Cir. 2019) ("The case law is clear that [f]ictitious parties must eventually be dismissed, if discovery yields no identities."  (alteration in original) (quoting *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998))); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").